UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | |
|---|---|
| RANDOLPH DUANE ROSS, | ) |
| Plaintiff, | ) ) ) Case No. 3:36-cv-00013 |
| v. | ) ) |
| GREG LAMBERT, | ) ) |
| Defendant. | ) ) |

## LEGAL MEMORANDUM IN SUPPORT OF
## MOTION FOR TEMPORARY RESTRAINING ORDER AND
## PRELIMINARY INJUNCTION AGAISNT DEFENDANT GREG LAMBERT

Plaintiff Randolph Duane Ross files this legal memorandum in support of his Motion for Temporary Restraining Order and Preliminary Injunction Against Defendant Greg Lambert ("Motion") and respectfully states as follows:[1]

### SUMMARY OF ARGUMENT

The Court should immediately enjoin Defendant Lambert from continuing his relentless campaign of defamation, disparagement, and cyber-harassment against Ross—a former track and field star and the current head coach of the University of Tennessee's track and field program. Defendant Lambert, who is a disgruntled former employee of Ross's program, has maliciously used a wide range of mediums (including letters, emails, text messages, social media posts, podcasts, videos, and music) to spread knowingly false and highly offensive propaganda about Ross in an intentional effort to harm Ross's personal and professional reputations. Among other

---

[1] Those terms not specifically defined in this memorandum incorporate the definitions utilized in the contemporaneously filed Verified Complaint and Motion for Temporary Restraining Order and Preliminary Injunction Against Defendant Greg Lambert.

things, Defendant Lambert has publicly accused Ross of: (i) using PEDs during his collegiate and professional careers; (ii) covering up the use of PEDs by collegiate and professional athletes under Ross's tutelage; and (iii) infidelity. Defendant Lambert also created and published doctored photographs to support his allegation that Ross fathered a child outside of his marriage as well as disseminated fake videos depicting Ross in sexually suggestive and compromising positions with public figures such as Sean "Diddy" Combs.

Defendant Lambert's defamatory and harassing conduct began more than a year ago in direct response to the University of Tennessee's rejection of his $150,000 demand to resolve a threatened discrimination lawsuit against the school and Ross (which Defendant Lambert notably never filed) and which continues to this day. In fact, the volume of false, malicious, abusive, and damaging misinformation by Defendant Lambert has only increased over time. Defendant Lambert's smear campaign has been directed to members of the University of Tennessee's athletic department, members of the athletic departments as numerous rival programs, and existing and prospective track and field recruits (and their families). Moreover, the timing of Defendant Lambert's defamatory statements and disparagement has been strategically timed to coincide with the collegiate track and field calendar to inflict maximum harm to Ross and his program.

Based upon the facts set forth in the Verified Complaint, it is entirely appropriate, and indeed necessary under the prevailing law, for the Court to intervene and enter an order granting a temporary restraining order and preliminary injunction. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.* 511 F.3d 535, 543-50 (6th Cir. 2007) (district court abused its discretion in denying preliminary injunction where evidence established that plaintiff was likely to succeed on the merits and would suffer irreparable harm if defendant's conduct was not enjoined); *Blount Pride, Inc. v. Desmond*, 690 F.Supp.3d 796, 807 (E.D. Tenn. 2023) (granting

temporary restraining order where plaintiff established "probable irreparable harm" arising from defendant's conduct); *Raymond James & Assoc. v. Saba*, 2025 WL 240986, *5, 7-8 (S.D. Ohio Jan. 17, 2025) (entering temporary restraining order in defamation case prohibiting defendant from sending emails accusing plaintiff of criminal actions and other offensive conduct). There exists a strong likelihood that Ross will succeed on the merits of his claims against Defendant Lambert. *See id*. It is also clear from the evidence that Ross will suffer immediate and irreparable harm if Defendant Lambert's wrongful conduct is allowed to continue. *See id*. Finally, the requested relief will not cause harm to any third parties but rather will serve to protect the public interest (including individuals and entities other than Ross who are also being maligned by Defendant Lambert's harassment campaign). *See id*.

Accordingly, the Court should grant the Motion and enter a temporary restraining order and preliminary injunction enjoining Defendant Lambert from: (i) communicating directly with Ross; (ii) publishing any further defamatory and disparaging communications about Ross (including but not limited to in-person communications, letters, emails, text messages or other electronic communications); and (iii) disseminating any defamatory, disparaging, or offensive material relating to Ross (including but not limited to videos, photographs, music, blogs, interviews, or articles) on any social media platform, app, streaming service, print media, mass media, or digital media.

## STATEMENT OF MATERIAL FACTS

### *Lambert is Forced to Resign from the University of Tennessee*

Ross is a highly regarded and accomplished collegiate and professional track star that has been well-known in the track and field community for over 35 years.[2] Ross has held several high-

---

[2] Verified Complaint, Doc. 1, at 18.

profile collegiate coaching positions and is the current Head Coach and Director of Track & Field at the University of Tennessee. Ross also trains professional track and field athletes in the off-season, including seven Olympians, two Olympic gold medalists, and an Olympic Bronze medalist.[3]

Defendant Lambert, a former collegiate runner who was previously unknown to Ross, approached Ross in or around 2022 seeking a position on Ross's staff at Tennessee.[4] Ross subsequently hired Lambert in August 2022 to serve as Tennessee's track and field Recruiting Coordinator.[5] But less than a year after hiring Lambert, Ross forced Lambert to "resign" (in lieu of being fired for cause) after a string on incidents in which Lambert conducted himself in a substandard and unprofessional manner.[6] Lambert formally resigned from his position as Recruiting Coordinator in May 2023.[7]

*Lambert Defames Coach Ross in a Futile Attempt to Force the University of Tennessee to Settle His Threatened Claims for Wrongful Termination and Discrimination*

Defendant Lambert filed an EEOC complaint against Ross and the University of Tennessee after his employment was terminated.[8] The EEOC case, however, was subsequently closed without a finding of probable cause against Ross or the University.[9] Lambert, upon information and belief, fired his second attorney after the EEOC file was closed.[10]

On or about May 30, 2024, Defendant Lambert sent a demand letter ("Demand Letter") to the University of Tennessee's Office of General Counsel threatening to sue the University and

---

[3] *Id.* at 19.
[4] *Id.* at 20.
[5] *Id.*
[6] *Id.* at 21-22.
[7] *Id.* at 22.
[8] *Id.* at 23.
[9] *Id.*
[10] *Id.* at 24.

Ross for "wrongful termination and discrimination" if he was not paid $150,000.[11] Lambert made a series of patently false and inflammatory allegations against Ross in the Demand Letter and warned that he would go to the media with his allegations if the University did not pay him.[12] Specifically, and among other things, Lambert made the following blatantly false and defamatory statements about Ross:[13]

(i) Ross had a history of using PEDs during his track and field career;

(ii) Ross was suspended by the USADA for the use of PEDs;

(iii) Ross was a key figure involved in the BALCO steroid scandal in the early-to-mid 2000s;

(iv) Ross's son, Randolph Duane Ross, Jr. (an Olympic gold medalist who trained under Ross), was suspended by the USADA for doping violations;

(v) Collegiate athletes that were part of Ross's previous track and field program at North Carolina A&T were suspended on multiple occasions for using PEDs;

(vi) Ross engaged in certain improprieties that caused his track and field team at North Carolina A&T to forfeit its titles and performances; and

(vii) Ross lacks competence and is a liability for the University of Tennessee.

The University of Tennessee responded to the Demand Letter in late June 2024 by flatly rejecting Defendant Lambert's "baseless" and "highly offensive" allegations against Ross and refused to engage in any negotiations with Defendant Lambert.[14]

*Defendant Lambert Abandons His Legal Claims and Commences With a Campaign of Harassment, Disparagement, and Highly Offensive Actions Against Coach Ross*

Defendant Lambert never filed a lawsuit or initiated any further legal proceedings against the University of Tennessee or Ross after his $150,000 demand was rejected without a

---

[11] *Id.* at 24, Ex. 1.
[12] *Id.* at 25.
[13] *Id.* at 26.
[14] *Id.* at 28.

counteroffer.[15] Instead, he initiated a vindictive and wide-ranging campaign that spread untruthful and malicious information about Ross and that otherwise portrayed Ross in a highly offensive and negative light throughout the track and field community (including prospective high school and transfer recruits of the University of Tennessee).[16] For example, on or about March 3, 2025, less than two weeks before Ross's team began competing at the 2025 NCAA Indoor National Championships, Defendant Lambert, under the pseudonym "G. Fury," released two songs on Apple Music and Spotify—titled "Vault Talk" and "Recruiter to Parent."[17] Both songs contain defamatory lyrics impugning Ross's character, including but not limited to allegations of drug use by Ross and his athletes as well as accusations that Ross was an untrustworthy and low character coach that should not be trusted by recruits and their parents.[18] At or about that same time, Defendant Lambert published "Vault Talk" and "Recruiter to Parent" in a public Facebook group titled The Real Deal Track & Field Group that, upon information and belief, includes high school and collegiate track and field recruits and their families.[19]

Then, in early-to-mid March 2025, Defendant Lambert released three additional songs on Apple Music and Spotify. One of those songs, "Laws of Attraction," again targeted Ross with false and disparaging allegations of scandal and fraud.[20] Defendant Lambert subsequently text messaged Ross directly with an audio copy of "Laws of Attraction," stating:

> Yo Dwayne, Real talk—thank you for being you…If you don't do what you did, none of this happens…Figured I'd let you hear this first since you played such a big role in making it happen...No link, straight to the source. Let me know your thoughts. Oh, and good luck and Nationals. Hope this doesn't throw off the game plan too much.[21]

---

[15] *Id*. at 29.
[16] *Id*.
[17] *Id*. at 30.
[18] *Id*. at 30-32.
[19] *Id*. at 33.
[20] *Id*. at 34.
[21] *Id*.

6

On March 13, 2025, Defendant Lambert published another nine-track album titled "To C.A.P" on Apple Music and Spotify. A majority of the songs on the album are directed at Ross and most, if not all, of these songs contain untruthful, derogatory and offensive statements about Ross. Among other things, Defendant Lambert: (i) alleges that Ross and his son have a history of using PEDs; (ii) claims that Ross runs a dirty program at Tennessee; and (iii) accuses Ross of infidelity.[22]

At or around this same time, Defendant Lambert also began spreading rumors that Ross—who is married with three children—had an affair with one of his female assistant coaches and fathered a child with that coach.[23] Defendant Lambert posted on his Instagram and Facebook accounts multiple AI generated/doctored photographs of Ross's three children along with the assistant coach's daughter but digitally modified the girl's face to make it appear to be Ross's face.[24] And in June 2025, Defendant Lambert released yet another song titled "S.L.A.P.," which clearly and unmistakenly insinuates that a paternity test is needed to determine if Ross fathered the assistant coach's daughter.[25]

Defendant Lambert remained silent over the next several months until resurfacing on November 12, 2025, when he directly texted Ross criticizing Ross's recent signing of a new track and field recruit.[26] Attached to the text was a copy of a disparaging video that was published on Instagram and Facebook portraying a fake interview in which Lambert harshly criticizes the skills and competence of Devin West, the individual who replaced Lambert as the University of Tennessee's Recruiting Coordinator.[27]

---

[22] *Id*. at 35-36.
[23] *Id*. at 38.
[24] *Id*. at 39
[25] *Id*. at 40.
[26] *Id*. at 41.
[27] *Id*.

Then, on December 5, 2025—the beginning of the college transfer portal window *and* Ross's birthday—Defendant Lambert dramatically ramped up his malicious campaign against Ross. First, Lambert sent a defamatory and wildly inappropriate email to hundreds of individuals in the collegiate track and field community, including members of the University of Tennessee's athletic department as well as members of the athletic departments of various rival schools such as Vanderbilt University, the University of Florida, the University of South Carolina, the University of Alabama, and the University of Texas.[28] The six-page email includes a bizarre fictional script ridiculing Ross as well as links to over *50 songs* (including each of the defamatory songs detailed above) recorded by Lambert and released on Apple Music and Spotify.[29] An overwhelming majority of these songs target Ross and are intended to defame, demean, and humiliate him.[30] That same day, Defendant Lambert posted on Instagram and Facebook a fake newscast about the BALCO steroid doping scandal from the early 2000s and its purported connection to the University of Tennessee Track and Field program under Ross.[31]

Then, between December 12, 2025 and December 25, 2025, Defendant Lambert posted more than *20 videos* on Instagram and Facebook attacking Ross's character with blatantly false allegations of wrongdoing and/or creating highly offensive and demeaning fake videos of Ross.[32] For example, and among many other things, Defendant Lambert created multiple sexually suggestive videos depicting Ross and Devin West in a hot tub with Sean "Diddy" Combs.[33] Another sexually suggestive fake video created and posted by Defendant Lambert depicts an

---

[28] *Id*. at 43, Ex. 2.
[29] *Id*. at 44.
[30] *Id*.
[31] *Id*. at 45.
[32] *Id*. at 46.
[33] *Id*. at 47.

undressed Ross being massaged by a half-dressed "Diddy."[34] Defendant Lambert also posted an AI generated video depicting Ross in prison with "Diddy" and Sherrone Moore—the disgraced former football coach at the University of Michigan who was recently arrested for allegedly assaulting one of his staff members with whom he was allegedly having an affair and had purportedly impregnated.[35]

In another video posted on Instagram and Facebook, Defendant Lambert makes it clear he is intentionally targeting Ross, explicitly warning "Ross, let me be very clear with you, I'm getting my pound of flesh. Not out of anger. Not out of revenge. But because the universe requires balance. And you my friend, owe."[36] And in another fake interview, Defendant Lambert gloats that his ongoing propaganda and online "content" is negatively affecting Ross's ability to attract recruits to his track and field program at Tennessee.[37]

On January 2, 2026, shortly before Tennessee's initial track and field meet for the 2026 season, Defendant Lambert posted yet another AI generated video in which he brags about "mentally torturing" and "mentally abusing" Ross "for months and years," noting in the written commentary that "I got folks talking lawsuits," "marriages under review," paternity tests getting scheduled," and that he is "laughing, locked in, and not letting up" in 2026.[38] Three days later, on January 5, 2026, Defendant Lambert posted another fake interview on Instagram and Facebook in which he again accuses Ross of infidelity and impregnating (and then firing) his former assistant coach at the University of Tennessee.[39]

Finally, on January 6, 2026, Defendant Lambert sent Ross a text message in which he

---

[34] *Id*.
[35] *Id*. at 48.
[36] *Id.* at 49.
[37] *Id*.
[38] *Id*. at 50.
[39] *Id*. at 51.

9

boasts that his campaign of defamation and cyber-harassment successfully prevented Ross from signing the 2025 Gatorade National Track and Field Player of the Year and top high school recruit in the county to Tennessee's 2026 recruiting class.[40] Also included in the text are links to two newly published songs by Lambert a/k/a/ "G. Fury"— titled "3-years-left" and "kinda-nice"— both of which defame Ross and his track program at Tennessee.[41]

Defendant Lambert's barrage of defamatory letters, emails, social medial posts, published songs, and fake videos continues to this day. And based upon Defendant Lambert's own statements, it is almost certain to continue in the future. Indeed, Lambert's harassment campaign appears to be accelerating despite Ross's efforts to simply ignore it. Ross's reputation—both professionally and personally—has been greatly damaged as a result of Defendant Lambert's improper and wrongful conduct and requires Court intervention.

**LEGAL ARGUMENT**

Ross seeks immediate relief from the Court to put a stop to Defendant Lambert's ongoing campaign of defamation, disparagement, and cyber-harassment carried out as retaliation for being terminated from his employment as the Recruiting Coordinator for Ross's track and field program at the University of Tennessee.

### A. Ross Has Satisfied the Legal Standard Necessary for a Temporary Restraining Order and Preliminary Injunction.

Trial courts are empowered under Rule 65 to issue temporary restraining orders and preliminary injunctions to preserve the parties' respective positions, *i.e.*, the status quo, until discovery can be conducted and the Court can have a trial on the merits. *Certified Restoration*, 511 F.3d at 542. Temporary restraining orders and preliminary injunctions are "customarily granted on

---

[40] *Id*. at 52.
[41] *Id*., Ex. 4.

the basis of procedures that are less formal and evidence that is less complete that in a trial on the merits." *Id*.

Federal courts consider four factors when deciding whether to issue a temporary restraining order or preliminary injunction:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the issuance of an injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction.

*Id*.; *see also Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007). "The four factors generally ought to be balanced against one another and should not be considered prerequisites to the grant of a temporary restraining order." *Blount Pride, Inc.*, 690 F.Supp.3d at 802 (*citing Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). Importantly, "[w]hen the Court is able to determine the propriety of a temporary restraining order by relying on fewer than all four factors, it may do so." *Id*.

**1. Ross has a high likelihood of success on the merits.**

A federal court exercising diversity jurisdiction must apply the substantive law of the forum state. *State Auto Prop. & Cas. Ins. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015). "The moving party need only show a likelihood of success on the merits of one claim where there are multiple claims at issue in the complaint. *Planned Parenthood Great Northwest, Hawaii, Alaska, Indiana, and Kentucky, Inc. v. Cameron*, 599 F.Supp.3d 497, 506 (W.D. Ky 2022) (collecting cases). "To show a likelihood of success on the merits, the moving party need not prove their case in full; the party need only 'show more than a mere possibility of success.'" *J.P. Morgan Securities, LLC v. Duncan*, 2022 WL 3325514, *4 (E.D. Mich. Aug. 11, 2022) (*quoting Certified Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007)). For the purposes of the Motion, the Court can focus on either of Ross's two causes of action as the Complaint clearly

11

states viable claims for both defamation and false light invasion of privacy.

Under Tennessee law, defamation occurs when: (1) a party publishes a statement; (2) with knowledge that the statement was false and defamatory; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *Hudik v. Fox News Network, LLC*, 512 F.Supp.3d 816, 824-25 (M.D. Tenn. 2021). A statement is defamatory if it can "reasonably be construable as holding the plaintiff up to public hatred, contempt or ridicule." *Id.* at 829 (*citing Tidwell v. Holsteon Methodist Federal Credit Union*, 2020 WL 3481573, * 4 (Tenn. Ct. App. June 25, 2020)). Similarly, to establish a claim for false light invasion of privacy, a plaintiff must allege "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Id*. at 835 (*citing West v. Media General Convergence, Inc.*, 53 S.W.3d 640, 644 (Tenn. 2001)). Where, as here, the plaintiff is a public figure, the "actual malice standard" (as opposed to the mere "negligence standard") applies to both the defamation and false light claims. *See id*. at 825, 835.

In the present case, Defendant Lambert unequivocally published numerous knowingly false statements concerning Ross for the sole purpose of exposing Ross to public shame and to cause serious injury to his personal and professional reputations. In fact, it is clear that Defendant Lambert engaged in a wide-spread smear campaign that falsely portrayed Ross and his athletes as prolific users of PEDs and someone who has been sanctioned by governing track and field bodies for running cheating track and field programs. Defendant Lambert also intentionally disseminated (i) false information and materials suggesting that Ross is an adulterer who fathered a child with an assistant coach at Tennessee and (ii) fake and sexually suggestive videos linking Ross with disgraced public figures such as Sean "Diddy" Combs and Sheronne Moore.

12

Case 3:26-cv-00013    Document 2-1    Filed 01/09/26    Page 12 of 16    PageID #: 54

The available evidence undeniably demonstrates that Defendant Lambert acted with conscious intent that far exceeds mere negligence and that Ross is likely to prevail on the merits of his claims for defamation and false light invasion of privacy. At a minimum, the sworn allegations and exhibits in the Verified Complaint show more than a mere possibility of success by Ross, thus warranting an order enjoining Defendant Lambert from engaging in any further defamatory conduct against Ross. *Certified Restoration*, 511 F.3d at 543.

2. **Ross will suffer irreparable harm if the TRO and Preliminary Injunction are not granted.**

Without an order from this Court, Ross will continue to suffer immediate and irreparable injury and harm to his personal and professional reputations. "A showing of 'probable irreparable harm is the single most important prerequisite of the issuance of a preliminary injunction.'" *Blount Pride, Inc.*, 690 F.Supp.3d at 807 (*citing Reuters, Ltd. V. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990)). An injury is irreparable when it "is not fully compensable by monetary damages." *Overstreet v. Lexington-Payette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). Reputational damage, including the loss of goodwill, is generally considered to be an "irreparable injury because the damages flowing from such losses are difficult to compute." *Certified Restoration*, 511 F.3d 535 at 550 (reversing denial of preliminary injunction where plaintiff would likely suffer loss of goodwill without injunction); *see also Basicomputer Corp. v. Scott*, 973 F. 2d 507, 511-12 (6th Cir. 1992) (upholding issuance of preliminary injunction on basis that "loss of customer goodwill often amounts to irreparable injury."); *see also Raymond James*, 2025 WL 240986 at *6 (damages suffered to plaintiffs' reputations as a result of defendant's defamatory statements deemed irreparable and warranted issuance of temporary restraining order)

If Defendant Lambert is allowed to continue with his malicious and intentional campaign of harassment and disparagement, Ross will suffer significant and permanent reputational harm,

13

leading to the loss of goodwill as contemplated in *Certified Restoration*, *Basicomputer*, and *Raymond James*. Such injuries cannot be fully compensated by monetary damages and necessitate the entry of an order prohibiting Defendant Lambert from any further similar conduct until the Court can fully resolve the present dispute on the merits.

### 3. The requested TRO and Preliminary Injunction will not cause substantial harm to others or the public.

The third and fourth factors—whether enjoining the defendant's conduct will cause harm to others or the public—weighs heavily in favor of Ross. Specifically, Ross seeks to enjoin Defendant Lambert from affirmative acts distributing disparaging communications about Ross and from publishing defamatory material as it relates to Ross, his family, his employees, and his employer. The requested relief would in no way harm any parties outside of this litigation and would have little, if any, effect on Defendant Lambert's *legitimate* interests. Indeed, the relief sought is narrowly tailored to protect Ross from serious and consequential harm while placing only minimal limitations on Defendant Lambert's First Amendment right to free speech. Protecting Ross against Defendant Lambert's wrongful and purposeful defamatory conduct more than outweighs any potential harm that Defendant Lambert might suffer as a result of being enjoined from further disparaging Ross. *Lothschuetz v. Carpenter*, 898 F.2d 1200, 1206, 1209 (6th Cir. 1990) (recognizing "modern rule" allowing restraint on defamatory speech); *see also In re Conservatorship of Turner*, 2014 WL 1901115, *20 (Tenn. Ct. App. May 9, 2014) (adopting "modern rule" that defamatory speech may be enjoined). "Not to mention, courts may discount harm to a defendant when there is 'evidence that the defendant 'knowingly and illegally' placed itself in a position to be harmed by injunctive relief.'" *Raymond James*, 2025 WL 240986 at *7 (citing *Williams-Sonoma Direct, Inc. v. Arhaus, LLC*, 109 F.Supp.3d 1009, 1021 (W.D. Tenn. 2015) and *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 382 (6th Cir.

14

2006)).

The public interest also weighs towards entering a temporary restraining order and preliminary injunction against Defendant Lambert. Restraining Defendant Lambert from continuing his harassment of Ross will serve the public interest by (1) protecting Ross's employees (including Devin West) and employer (*i.e.*, the University of Tennessee) from further repugnant attacks by Lambert and (2) protecting the public (including high school and college recruits, and their respective families) from receiving unsolicited communications and the dissemination of disturbing, offensive, and defamatory photographs, videos, and social media posts that serve no public benefit. Critically, the injunctive relief requested by Ross "focuses upon Defendant's potential conduct—not pure speech—and serves the public interest by effectuating the law." *Id* (*citing Tri-County Wholesale Distrbs., Inc. v. Wine Group, Inc.*, 565 F. App'x 477, 484 (6th Cir. 2012). In light of the above, the Motion should be granted.

### B. The Court Should Not Require Ross to Post a Security Bond.

The Rules require the party seeking a temporary restraining order or preliminary injunction to provide security in an appropriate amount to pay for the costs sustained by an opposing party in the event such party is "found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, district courts have broad discretion to determine what amount of security, if any, is required. *Molton Co. v. Eagler-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995). Courts typically do not require a bond as a condition of a temporary restraining order or preliminary injunction when the order does not threaten to harm the non-moving party, individually, or damage the property of the non-moving party." *Raymond James*, 2025 WL 240986 at *7-8.

Here, an order prohibiting Defendant Lambert from communicating with Ross directly and/or enjoining him from any further publication or dissemination of harassing, disparaging, and

defamatory communications, information or materials about Ross will pose no hardship upon Lambert and will not otherwise harm him during the pendency of any restraining order or injunction entered in connection with the Motion. Consequently, there is no need for Ross to post a bond. *See id*.

## CONCLUSION

For those reasons stated above, as well those contained in the contemporaneously filed Motion, the Court should enter a temporary restraining order and preliminary injunction immediately enjoining Defendant Lambert from any additional actions in furtherance of his defamatory, disparaging, and cyber-harassment campaign against Ross.

Dated: January 9, 2026

/s/ Gregory F. Coleman
Gregory F. Coleman (BPR # 014092)
S. Jarret Raab*
Ryan McMillan (BPR # 030542) COLEMAN LAW, PLLC
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 379329
Tel. 865.407.0539
gcoleman@gregcolemanlaw.com
jraab@gregcolemanlaw.com
rmcmillan@gregcolemanlaw.com

* *Pro ac Vice* application pending

*Counsel for Plaintiff Randolph Duane Ross*