**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

RANDOLPH DUANE ROSS,

Plaintiff,

v.

GREGORY B. LAMBERT,

Defendant.

Case No. 3:26-cv-00013-TAV-JEM

**DEFENDANT GREGORY B. LAMBERT'S RULE 11(c)(2) MOTION FOR SANCTIONS AGAINST RYAN McMILLAN AND COLEMAN LAW, PLLC CONCERNING THE AUGUST 14, 2026 SANCTIONS PAPER**

**SAFE-HARBOR SERVICE COPY - NOT FILED**

*This paper is for Rule 11(c)(2) service only. It is not being filed or presented to the Court at this time.*

Defendant Gregory B. Lambert, proceeding pro se, serves this separate motion under Federal Rule of Civil Procedure 11(c)(2) against attorney Ryan McMillan, the electronic signer of Plaintiff's August 14, 2026 sanctions memorandum (Doc. 73-1), and Coleman Law, PLLC, whose responsibility is governed by Rule 11(c)(1). This motion principally challenges specific factual contentions under Rule 11(b)(3) and, secondarily, the objective purpose of the paper under Rule 11(b)(1). Defendant does not presently seek Rule 11(b)(2) sanctions, does not seek sanctions against Plaintiff Ross personally, and does not seek sanctions merely because counsel filed an aggressive motion, used sharp language, or advanced a legal position with which Defendant disagrees. This is not a mirror-image response; it challenges the certifications attached to the paper Plaintiff chose to place on the docket.

The principal Rule 11(b)(3) issue is source accuracy. The Sixth Circuit recognizes that Rule 11 includes a duty of candor and permits sanctions when counsel materially misrepresents the evidence supporting a factual contention. King v. Whitmer, 71 F.4th 511, 521 (6th Cir.

2023). Doc. 73-1 repeatedly represents that Lambert 'acknowledged,' 'concedes,' 'expressly admitted,' and 'explicitly conceded' that his litigation activity had a sole or exclusive improper purpose. It states, among other things, that Lambert's strategy was 'solely designed' and 'purely designed' to increase fees, harass Ross, and force dismissal. Ex. C at 1, 7, 9-10.

The cited May 21 source contains provocative cost rhetoric, including 'Every objection carries a cost here,' 'That is the trap,' and 'Your invoice is.' Ex. E. Defendant does not conceal those words. But the same source also describes the reduction of the then-pending RFAs from 314 to 75, the organization and claimed relevance of the requests, the Rule 36 deadline, the asserted evidentiary purpose, and the meet-and-confer posture. The source supports an argument or inference about motive. It does not facially contain a literal confession that the litigation strategy had 'nothing more' than a sole bad-faith purpose. Under King, the factual contention presented to the Court must accurately reflect the source from which it is drawn.

Two additional source-to-representation discrepancies reinforce the concern. First, Doc. 73-1 says Lambert 'agreed to withdraw his second Rule 11 Motion.' Ex. C at 6. The signed July 8 Joint Status Report states that Lambert agreed 'to withhold filing his second proposed Rule 11 motion for sanctions' as part of a reciprocal discovery resolution. Ex. D. Second, Doc. 73-1 refers to an 'agreement to limit Lambert's RFAs.' Ex. C at 7. The signed July 8 report resolves the then-outstanding RFA dispute by withdrawal and reissuance of 38 RFAs, but states no prospective numerical cap. Ex. D. Defendant includes counsel's August 4 email expressing a contrary interpretation of the 38-RFA resolution as adverse context. Ex. L. Counsel may advocate that interpretation; the filing should distinguish an interpretation from the text of the signed report.

The Rule 11(b)(1) issue is narrower, alternative, and cumulative. Defendant does not rely on counsel's emotional word choice or on extrajudicial speech to prove improper purpose. See King, 71 F.4th at 519-20. The objective chronology is: the July 22 R&R recommended denial of broad prospective Rule 65 restraints after First Amendment analysis; Plaintiff's August 5 objection expressly conceded that part of the original public-statement/commentary restraint was impermissible at the preliminary-injunction stage; and nine days later Doc. 73 invoked sanctions and inherent authority to request an undefined order requiring Lambert to 'immediately cease with any further harassing and unprofessional conduct' plus leave-of-court restrictions on future motions. Exs. A-C. Sanctions may legitimately deter misconduct; the sequence therefore does not prove an improper purpose by itself. It is offered only in combination with the source-amplification issues and the breadth of future-facing relief, if the Court concludes those objective circumstances support a Rule 11(b)(1) inference.

Rule 11(d) defines an important boundary. Defendant does not seek Rule 11 sanctions for Plaintiff's discovery responses, objections, disclosures, or other papers governed by Rules 26 through 37. Those materials are used only because Doc. 73 affirmatively relies on discovery as part of its sanctions narrative and because the record shows that discovery remained active and source-generating when Plaintiff sought a prefiling gate. The July 29 RFA answers, July 31 RFP responses, August 13 supplemental disclosures, August 13 supplementation request, and August 14 staggered roadmap are therefore context, not separate Rule 11 offenses. Exs. G-K.

## SAFE-HARBOR CURE REQUESTED

Rule 11(c)(2) is designed to permit withdrawal or appropriate correction before judicial intervention. Defendant therefore requests that, during the safe-harbor period, McMillan and Coleman Law withdraw Doc. 73/73-1 or appropriately correct the specific challenged

contentions. Withdrawal of the entire sanctions motion is not required if the challenged factual representations are accurately corrected and any requested prospective relief that depends on those representations is correspondingly narrowed.

**1.** Replace or withdraw the assertions that Lambert literally 'acknowledged,' 'concedes,' 'expressly admitted,' or 'explicitly conceded' a sole or exclusive improper litigation purpose, unless counsel identifies the exact source language supporting that factual characterization. Counsel may instead state the contention as an inference from identified words.

**2.** Correct the statement that Lambert 'agreed to withdraw' the second proposed Rule 11 matter to the signed July 8 formulation - 'withhold filing' - unless a different source establishes an actual withdrawal.

**3.** Correct the statement that the July 8 agreement prospectively 'limit[ed] Lambert's RFAs,' or identify the language creating the asserted prospective numerical cap. If counsel relies on its August 4 interpretation, identify it as counsel's interpretation rather than the signed report's text.

**4.** To the extent the requested prospective 'cease' order or prefiling restriction materially depends on the challenged source characterizations, withdraw, define, or narrow that relief so the requested scope is clear and does not rely on an inaccurately amplified factual predicate.

**5.** If another source supports any challenged factual contention, identify that source in the correction so the factual proposition can be compared to the evidence actually relied upon.

## RELIEF IF THE SAFE HARBOR EXPIRES WITHOUT APPROPRIATE CORRECTION

If the challenged contentions are not withdrawn or appropriately corrected after the full safe-harbor period, Defendant may file this motion and supporting memorandum. Defendant will principally request a Rule 11(b)(3) finding as to unsupported source characterizations that remain

and, secondarily, a Rule 11(b)(1) finding if the Court concludes the paper was presented for an improper purpose. Defendant presently seeks only nonmonetary relief tailored to deterrence: correction or withdrawal of unsupported factual contentions, a directive that continued advocacy accurately distinguish source text from inference, and such other limited nonmonetary relief as the Court deems sufficient. Defendant separately preserves his merits opposition to Doc. 73; denial of that underlying relief is not requested as a Rule 11 sanction. Defendant seeks neither compensation for his pro se time nor monetary sanctions against Ross.

The August 14 memorandum bears McMillan's electronic signature. Ex. C at 12. Rule 11(c)(1) permits sanctions against an attorney responsible for a violation and provides that, absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee. This motion is therefore directed to McMillan and Coleman Law rather than indiscriminately naming every attorney appearing in the case.

**CERTIFICATE OF SAFE-HARBOR SERVICE**

I certify that on August 18, 2026, I served this Rule 11(c)(2) motion, the supporting memorandum, and the accompanying exhibit packet by first-class U.S. mail under Rule 5(b)(2)(C), addressed to Coleman Law, PLLC, 800 S. Gay Street, Suite 1100, Knoxville, Tennessee 37929. I also transmitted a courtesy copy by email to counsel of record; the courtesy email is not intended to substitute for the Rule 5 mail service stated above. This motion is not being filed with or presented to the Court at this time.

**/s/ Gregory Bernard Lambert**
Gregory Bernard Lambert
7218 Single Wheel Path
Columbia, Maryland 21046
Tel. 410.336.4538
lalambert1982@gmail.com
Defendant, Pro Se

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

RANDOLPH DUANE ROSS,

Plaintiff,

v.

GREGORY B. LAMBERT,

Defendant.

Case No. 3:26-cv-00013-TAV-JEM

**MEMORANDUM IN SUPPORT OF DEFENDANT'S RULE 11(c)(2) MOTION FOR SANCTIONS AGAINST RYAN McMILLAN AND COLEMAN LAW, PLLC**

**SAFE-HARBOR SERVICE COPY - NOT FILED**

*This paper is for Rule 11(c)(2) service only. It is not being filed or presented to the Court at this time.*

## PRELIMINARY STATEMENT

This revised motion has two grounds, not three. Its principal ground is Rule 11(b)(3): whether the August 14 sanctions memorandum accurately represented the source evidence when it repeatedly converted disputed inferences about Lambert's motives into purported express admissions of a sole improper purpose. Its secondary ground is Rule 11(b)(1): whether the objective sequence and function of the paper, considered together with those amplified factual predicates, permit a narrower improper-purpose inference. The chronology alone is insufficient; the timing and breadth of the requested prospective relief matter only if the Court first finds material source-amplification or other objective circumstances connecting the paper to an improper purpose. Defendant no longer advances Rule 11(b)(2) as an independent sanctions ground. Plaintiff had a nonfrivolous basis to invoke inherent authority and to request prefiling restrictions; the breadth and timing of that requested relief are relevant here only to purpose, materiality, and cure. It is not a mirror-image response to the mere fact that Plaintiff sought

sanctions; it addresses the accuracy and purpose certifications attached to what Plaintiff chose to place on the docket.

That narrowing is deliberate. Rule 11 is not a vehicle for punishing hard advocacy, losing arguments, offensive adjectives, or every disagreement about what an email means. The Sixth Circuit's published decision in King v. Whitmer cuts both ways and supplies the controlling discipline. King rejected an improper-purpose theory that rested on protected extrajudicial political speech, while separately recognizing Rule 11's duty of candor and affirming sanctions where counsel materially overstated what their sources actually supported. 71 F.4th 511, 519-24 (6th Cir. 2023). This motion accepts the first rule and relies on the second.

The Advisory Committee also cautions that cross-motions for sanctions should rarely be needed, while expressly recognizing that a sanctions motion is itself subject to Rule 11. Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Defendant therefore does not serve this motion merely because he opposes Doc. 73 or because he wants reciprocal sanctions. He serves it to identify three concrete source-to-representation problems and to give the signer and firm the precise correction opportunity Rule 11(c)(2) contemplates. Defendant does not seek attorney's fees for his own pro se time.

The record therefore should be read in a precise order. First read Doc. 73-1's categorical factual formulations. Ex. C. Then read the May 21 source they invoke. Ex. E. Then compare Doc. 73-1's descriptions of the July 8 resolution with the signed report itself and with counsel's later contrary interpretation. Exs. D, L. Only after those source comparisons should the Court, if this motion is eventually filed, consider the R&R/August 5/August 14 chronology and the limited discovery context. Exs. A-B, G-K. The issue is not whether counsel could criticize

Lambert. The issue is whether counsel accurately described the evidence when asking the Court to exercise sanctions power and impose ongoing restrictions.

## I. GOVERNING RULE 11 PRINCIPLES

### A. Rule 11(b)(3) requires evidentiary support for the factual contention actually presented.

By presenting a written motion or other paper, an attorney certifies that, after an inquiry reasonable under the circumstances, the factual contentions have evidentiary support or, when specifically so identified, likely will have evidentiary support after a reasonable opportunity for investigation or discovery. Fed. R. Civ. P. 11(b)(3). The Sixth Circuit describes Rule 11 as carrying an implied duty of candor: counsel may be sanctioned when they misrepresent the evidence supporting their contentions, including factual assertions they knew or after reasonable investigation should have known were false or wholly unsupported. King, 71 F.4th at 521 (citing Rentz v. Dynasty Apparel Indus., Inc., 556 F.3d 389, 395 (6th Cir. 2009)).

King is particularly instructive on source transformation. It emphasizes that an adequate Rule 11 inquiry includes actually reading the documents counsel uses to support filed contentions. 71 F.4th at 522. There, a source describing a voting shift as 'unexpected' was converted in the pleading into a materially stronger fraud allegation; the Sixth Circuit held the amplified allegation sanctionable because it misrepresented the source. Id. at 523-24. The analogy here is limited but direct: an email from which counsel may argue an improper motive is not automatically an 'express admission' that the improper motive was the sole purpose of the litigation activity.

The duty is continuing. Recent published Sixth Circuit authority reiterates both the prefiling inquiry and the continuing responsibility to review and reevaluate positions and, when appropriate, modify them to conform to Rule 11. Bojicic v. DeWine, 145 F.4th 668, 671 (6th Cir.

2025). The safe harbor exists to make that reevaluation possible before sanctions litigation becomes necessary.

**B. Rule 11(b)(1) is objective, but King limits the evidence from which improper purpose may be inferred.**

Rule 11(b)(1) certifies that a paper is not presented for an improper purpose such as harassment, unnecessary delay, or needless increase in litigation cost. Defendant does not ask the Court to infer improper purpose from counsel's sharp rhetoric, personal frustration, or protected extrajudicial speech. King reversed an improper-purpose sanction where the cited political speech did not itself evidence harassment, delay, or another Rule 11 purpose. 71 F.4th at 519-20. This motion therefore rests on the paper's objective procedural function: what relief Doc. 73 sought, when it sought it, what categories it aggregated as predicates for that relief, and whether the material factual predicates were accurately sourced.

**C. The revised motion does not assert a Rule 11(b)(2) violation.**

Plaintiff cited authority for inherent-power sanctions and prefiling restrictions. Whether the requested 'cease' order or prefiling condition is overbroad, premature, or ultimately denied is therefore not presented here as a frivolous legal contention. The scope of that requested relief matters only to the secondary Rule 11(b)(1) purpose analysis and to whether the amplified factual predicates were material.

**D. The safe harbor must be formal and exact.**

A party-initiated Rule 11 motion must be made separately, describe the specific conduct alleged to violate Rule 11(b), and be served under Rule 5 before filing. Fed. R. Civ. P. 11(c)(2). The Sixth Circuit strictly enforces that procedure. Ridder v. City of Springfield, 109 F.3d 288, 296-97 (6th Cir. 1997). A warning letter is not enough; formal service of the motion itself is

required. Penn, LLC v. Prosper Business Development Corp., 773 F.3d 764, 767-68 (6th Cir. 2014). The Advisory Committee further states that a sanctions motion is itself subject to Rule 11. Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. This motion and memorandum are therefore being served as a formal safe-harbor package and are not being presented to the Court now.

Rule 11(d) separately excludes disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37. No discovery paper is charged as a Rule 11 offense here.

## II. THE PRINCIPAL RULE 11(B)(3) ISSUE: DOC. 73-1 MATERIALLY AMPLIFIES ITS SOURCES

### A. Source comparison one: cost rhetoric became a purported express confession of a sole litigation purpose.

Doc. 73-1 does not merely argue that Lambert's words permit an inference of improper motive. It repeatedly reports the inference as a fact Lambert supposedly admitted. On page 1, it says Lambert 'acknowledged his gamesmanship' and 'concedes it is nothing more than a strategy to waste time and resources, increase Ross's litigation expenses, and extort Ross into abandoning his case.' Ex. C. On page 7 it says Lambert 'expressly admitted that his abusive litigation strategy is solely designed to drive up Ross's legal expenses' and that his filings are 'purely designed' to harass and deter Ross. Id. On page 9 it says Lambert 'explicitly conceded' that his intentions were to increase fees and financially pressure Ross into dropping the suit, and that the case was multiplied 'for no reason other than' harassment. Id.

Those formulations matter because 'the source supports an inference' and 'the opposing party expressly admitted the fact' are different factual contentions. The latter tells the Court it need not infer motive at all; it suggests the opponent supplied the dispositive admission himself.

The May 21 source is adverse to Lambert and is included in full selected context. It states: 'Every objection carries a cost here.' It calls the structure 'the trap.' It tells Ross, 'Defendant is not your biggest problem. Your invoice is.' Ex. E. Those words are provocative, unhelpful to Lambert, and legitimately available to Plaintiff as evidence supporting an inference that cost pressure was part of Lambert's rhetoric or strategy. This motion does not ask the Court to pretend otherwise.

But the same source also says Lambert reduced the operative RFA set from 314 to 75; describes the requests as organized by identified subject matter; identifies the Rule 36 response deadline; explains the asserted consequences of admissions or objections; ties the requests to Plaintiff's filings and irreparable-harm theory; and states that Lambert had documented relevance and completed the meet-and-confer. Ex. E. Whether those legal positions were correct is separate. The source itself contains a litigation-purpose explanation alongside the cost rhetoric.

The challenged factual representation is therefore not 'Lambert used cost rhetoric.' He did. Nor is it 'Plaintiff may infer an improper motive.' Plaintiff may argue that. The challenged representation is the categorical claim that Lambert expressly confessed that his litigation strategy had 'nothing more,' 'solely,' 'purely,' and 'no reason other than' an improper purpose. If counsel has an exact source for that confession, the safe harbor allows counsel to identify it. If not, King supports correction from purported admission to argued inference. See 71 F.4th at 521-24.

**B. Source comparison two: "withhold filing" became "agreed to withdraw."**

Doc. 73-1 states that Lambert 'later agreed to withdraw his second Rule 11 Motion.' Ex. C at 6. The signed July 8 Joint Status Report says: 'Lambert has agreed to withhold filing his second proposed Rule 11 motion for sanctions.' Ex. D. The same paragraph appears in a

reciprocal discovery resolution in which Ross agreed to supplement specified witness categories and conduct a good-faith search for discoverable responsive documents. Id.

This mismatch is narrower than the motive language and would not justify sanctions standing alone. But source precision matters because 'withdraw' ordinarily suggests abandonment of the motion or contention, whereas 'withhold filing' states a non-filing commitment. If counsel relies on a July 7 meeting summary or another communication showing a broader agreement, counsel can identify that source. If the signed Joint Status Report is the source, the simplest cure is to use its words.

### C. Source comparison three: resolution of the then-outstanding RFAs became a prospective "agreement to limit" future RFAs.

Doc. 73-1 says that, after Ross answered the reissued 38 RFAs, Lambert served later RFAs '[b]ut despite the agreement to limit Lambert's RFAs.' Ex. C at 7. The signed July 8 report states that the parties had 'resolved their dispute concerning the outstanding requests for admission' by withdrawal of prior RFAs, reissuance of 38, and request-by-request answers. Ex. D. The report contains no sentence setting a prospective numerical cap and no term addressing admissions requests generated by later disclosures or productions.

Defendant includes the evidence most favorable to counsel's interpretation. On August 4, Raab wrote that counsel's position was that 25 RFAs total was the upper limit of reasonableness and that the agreement to answer 38 was intended to resolve the issue. Ex. L. That email is relevant and should not be hidden. It explains why counsel may have understood the July resolution as broader than its literal text. But it remains counsel's interpretation. A filed sanctions memorandum can say 'counsel understood the July resolution to limit later RFAs'; it should not state an unstated prospective cap as though the signed report itself contains that term.

### D. The pattern is material because the amplified formulations supply the predicate for extraordinary prospective relief.

Any one imprecise word might be harmless. The concern is cumulative and functional. Doc. 73 moves from purported admissions of a sole improper purpose, to a purported withdrawal, to a purported RFA limitation, and then asks the Court to impose fees, an immediate prospective cease order, and prefiling conditions. Ex. C. The amplified descriptions therefore do work in the argument: they make disputed intent and disputed procedural understandings sound settled by Lambert's own concessions. Rule 11(b)(3) requires support for the factual contentions actually presented, not merely for a weaker proposition counsel could have argued accurately.

## III. RULE 11(B)(1): THE OBJECTIVE SEQUENCE SUPPORTS A SECONDARY IMPROPER-PURPOSE INFERENCE

### A. The Rule 65 record established the prospective-control dispute.

Plaintiff originally sought broad preliminary restrictions on publication and public statements concerning Ross, his family, the litigation, and UT-related subjects. Ex. A. The July 22 R&R considered even Plaintiff's narrowed reply position - including no direct contact with Ross, restrictions on communications with UT personnel, competing programs, current or prospective recruits, and new AI-generated material - and concluded that the requested relief still regulated speech. Doc. 66 at 28-30; Ex. A. The R&R found the requested restriction unsupported at that juncture, overbroad, and a prior restraint, and declined to determine truth or falsity before a merits adjudication. Id. at 30-33.

**B. Plaintiff's August 5 objection conceded part of the original restraint and reframed the remaining request.**

Plaintiff's August 5 objection expressly conceded that the original relief was impermissible at the preliminary-injunction stage insofar as it would enjoin publication of public statements or commentary. Ex. B. Plaintiff then reframed the remaining request around channels and recipients: direct contact with Ross, direct electronic communications to UT personnel and competing programs or recruits, and creation of new AI-fabricated images. Id. This is important not because an objection was improper - it was not - but because it fixes Plaintiff's own understanding of the constitutional problem immediately before Doc. 73.

**C. Nine days later Doc. 73 changed vehicles and again requested future-facing control.**

On August 14, Doc. 73-1 asserted that Lambert 'will not stop unless and until he is made to do so' and asked the Court to order him to 'immediately cease with any further harassing and unprofessional conduct.' Ex. C at 1. The memorandum placed under that umbrella public content, AI imagery, direct communications, communications to UT and third parties, motion practice, Rule 11 notices, discovery, and threatened future filings. Id. at 2-10. It then requested attorney's fees and a prefiling restriction requiring leave before Lambert could file additional motions. Id. at 11-12.

The sanctions request is not identical to the preliminary injunction, and this motion does not say it is. Sanctions may legitimately deter litigation abuse, and prefiling restrictions may be available in appropriate circumstances. The narrower Rule 11(b)(1) question is whether, in this specific sequence, Doc. 73 used amplified factual predicates to seek future-facing control over a materially overlapping course of communications and litigation activity after the Rule 65 route had encountered an adverse constitutional recommendation. The sequence alone is insufficient. It

matters only cumulatively with the source-accuracy problems in Section II and only if the Court concludes the objective record supports an improper-purpose inference.

Consistent with King, Defendant does not rely on counsel's phrase 'But no more,' other emotional adjectives, or any extrajudicial advocacy to prove purpose. 71 F.4th at 519-20. The inference is drawn from the paper itself, the relief it seeks, the procedural sequence, and the factual predicates used to support that relief.

## IV. THE DISCOVERY RECORD IS LIMITED CONTEXT, NOT A SEPARATE RULE 11 CLAIM

Rule 11(d) forecloses using Rule 11 as a substitute for Rules 26 through 37. Plaintiff's discovery objections, RFP responses, and disclosures are not charged as Rule 11 violations. Nor does Defendant claim that every later RFA was proper or proportional. The historical 1,304-request universe gives Plaintiff legitimate grounds to raise burden and proportionality concerns.

The limited discovery evidence is relevant because Doc. 73 itself used discovery as a sanctions predicate while seeking a gate on future motion practice. The July 29 individualized answers to the 38 reissued RFAs produced substantive admissions, including an admission that no text message, email, phone recording, or written statement from a recruit or parent had been produced stating that a recruit declined Tennessee because of Defendant's content. Ex. G. The July 31 recruit-focused RFP responses likewise stated that Ross possessed no responsive documents for several recruit-contact, recruit-causation, enrollment-decision, and recruiting-damages categories, while promising a reasonable search for other recruiting communications. Ex. H.

On August 13, Plaintiff supplemented his disclosures with additional named witnesses and broad categories of persons who 'may have viewed' publications, repeatedly assigning the generic subject 'Lambert's defamatory statements; falsity.' Ex. I. The supplementation therefore

generated identifiable questions about actual exposure, which publication corresponded to which witness, what statement each witness allegedly knew to be false, recruit causation, employment-history witnesses, and supporting documents.

Lambert's contemporaneous response is also in the record. On August 13 he asked for supplementation before converting every new issue into more RFAs/RFPs and wrote: 'I can turn every one of those questions into RFAs and RFPs. I would rather not. A meaningful supplementation now will reduce the amount of written discovery required later.' Ex. K. At 8:00 a.m. on August 14, he transmitted a consolidated calendar stating that its purpose was to avoid overlapping deadlines and address Plaintiff's repeated concerns about volume, burden, and timing. Ex. J. Those statements do not erase the earlier overinclusive discovery history. They do undercut any categorical suggestion that every continuing discovery step necessarily had one sole harassing purpose.

The sanctions motion did not expressly request a discovery stay, so this memorandum does not claim it did. The precise point is that unresolved, source-generating discovery was part of the live case when Doc. 73 asked for a prefiling gate. That context informs Rule 11(b)(1) and the materiality of the 'agreement to limit RFAs' characterization; it is not an independent sanctions count.

## V. CANDOR ABOUT THE RECORD MAKES THE SOURCE-ACCURACY ISSUE STRONGER, NOT WEAKER

Defendant's own record contains substantial adverse evidence. His communications included insulting, sexualized, sarcastic, and deliberately provocative material. He used cost rhetoric. He sent AI imagery and communications that Plaintiff has a substantial basis to characterize as offensive or harassing. Plaintiff therefore had a legitimate factual basis to seek

some form of sanctions and to argue that certain conduct reflected improper motive. This Rule 11 motion does not deny that reality.

That is why the motion is not framed as 'Plaintiff had no evidence.' The better and narrower contention is: Plaintiff had evidence supporting an argument, but Doc. 73 repeatedly described the argument as Lambert's express admission of a sole purpose. A source can be damaging and still be materially overstated. King demonstrates why that distinction belongs inside Rule 11(b)(3), not inside a rhetorical dispute about tone. 71 F.4th at 521-24.

The same restraint applies to the July 8 issues. 'Withhold filing' versus 'withdraw' is not, by itself, a sanctions case. Counsel's August 4 email gives a colorable basis for its understanding of the 38-RFA resolution. Those points become significant cumulatively because Doc. 73 presents multiple disputed interpretations as settled historical facts and then uses the resulting narrative to support prospective restrictions.

## VI. RESPONSIBILITY AND SAFE-HARBOR CURE

Doc. 73-1 bears Ryan McMillan's electronic signature. Ex. C at 12. Rule 11(b) applies to the attorney who presents a paper by signing, filing, submitting, or later advocating it. King, 71 F.4th at 531. Rule 11(c)(1) permits a sanction against an attorney or law firm responsible for a violation and ordinarily makes the law firm jointly responsible for a violation by its partner, associate, or employee absent exceptional circumstances. The revised motion therefore identifies McMillan and Coleman Law, PLLC. It does not indiscriminately name Ross, Raab, or Coleman individually. If another attorney later advocates a challenged contention after safe-harbor notice, Rule 11(b)'s 'later advocating' language speaks for itself; this motion does not seek prospective sanctions for conduct that has not occurred.

The safe-harbor cure is intentionally surgical. Defendant does not demand dismissal of Ross's lawsuit, a discovery concession, settlement, payment, or withdrawal of every sanctions argument. Counsel may continue to argue from the same evidence if it accurately identifies inference as inference and interpretation as interpretation.

**1.** Correct the motive language unless an exact source supports the claimed literal concession. Replace 'acknowledged,' 'concedes,' 'expressly admitted,' 'explicitly conceded,' 'solely designed,' 'purely designed,' and 'for no reason other than' with accurately sourced language or identify the exact passage supporting those formulations.

**2.** Use the signed July 8 language - 'withhold filing' - for the second proposed Rule 11 matter unless a different source establishes actual withdrawal.

**3.** Describe the July 8 RFA resolution as resolving the then-outstanding RFA dispute unless counsel identifies text creating a prospective numerical cap. Counsel may expressly state its August 4 interpretation of the agreement.

**4.** If the requested 'cease' order or prefiling restriction depends materially on the challenged factual amplifications, withdraw, define, or narrow that relief so the requested prospective control is tied to accurately stated predicates.

**5.** Identify any additional source counsel contends supports a challenged factual proposition.

This is exactly what Rule 11(c)(2) is designed to accomplish: correction before judicial involvement. See Ridder, 109 F.3d at 296-97; Penn, 773 F.3d at 767-68. If served by mail, Defendant will also account for the additional three days provided by Rule 6(d) before considering the safe harbor expired.

## VII. RELIEF IF THE SAFE HARBOR EXPIRES WITHOUT CURE

If the challenged contentions remain uncorrected after the applicable safe-harbor period, Defendant will ask the Court principally to determine whether the remaining source characterizations violate Rule 11(b)(3) and secondarily whether the objective record supports a Rule 11(b)(1) finding. Defendant does not request a Rule 11(b)(2) sanction in this revised motion.

The requested sanction should be limited to what suffices to deter repetition. Fed. R. Civ. P. 11(c)(4). Defendant presently seeks nonmonetary relief: correction or withdrawal of unsupported factual contentions; a directive that any continued advocacy accurately distinguish source text from inference; and such other limited nonmonetary relief as the Court determines sufficient to deter repetition. Defendant separately preserves his merits opposition to any relief requested in Doc. 73 that depends upon the challenged factual characterizations. Denial of that underlying relief is not itself requested as a Rule 11 sanction. Defendant does not seek fees for his own pro se time and does not presently seek a monetary sanction against Ross. This limited remedy keeps the motion focused on accuracy rather than retaliation.

## CONCLUSION

The strongest Rule 11 question here is not whether Plaintiff was entitled to criticize Lambert or seek sanctions. Plaintiff had evidence supporting criticism and some sanctions theory. The question is whether counsel, when invoking the Court's sanctions power, accurately described what that evidence actually established. Binding Sixth Circuit precedent recognizes that a lawyer may not transform a source into a materially stronger factual assertion the source does not support. King, 71 F.4th at 521-24. Doc. 73 repeatedly transformed evidence from which motive could be inferred into purported express admissions of a sole improper purpose, and it

materially restated the text of a signed discovery resolution. The objective chronology and requested prospective control supply a secondary Rule 11(b)(1) issue, not a substitute for the source-accuracy showing. Rule 11(c)(2) now gives McMillan and Coleman Law the opportunity to correct those matters without involving the Court. Defendant respectfully requests that they do so.

**/s/ Gregory Bernard Lambert**

Gregory Bernard Lambert
7218 Single Wheel Path
Columbia, Maryland 21046
Tel. 410.336.4538
lalambert1982@gmail.com
Defendant, Pro Se

SAFE-HARBOR SERVICE COPY - NOT FILED

# CORE EVIDENCE ROADMAP - READ THESE FIRST

*Annotations are demonstrative emphasis only. This roadmap adds no evidence and does not alter the source documents.*

**Purpose.** Test the principal Rule 11(b)(3) source-accuracy question before reaching broader chronology or discovery context. The shortest path is: filed representation -> actual source -> correction question.

## I. PRINCIPAL RULE 11(b)(3) - THREE SOURCE COMPARISONS

1. **Exhibit C -> Exhibit E: motive / admission transformation** - Doc. 73-1 uses "acknowledged," "concedes," "expressly admitted," "explicitly conceded," "solely designed," "purely designed," and "no reason other than." Compare those formulations to the May 21 source. The source contains strong cost rhetoric, but it also contains a litigation-purpose explanation. Core question: does the source support a literal confession of sole purpose, or an inference counsel may argue?
2. **Exhibit C -> Exhibit D: "withdraw" versus "withhold filing"** - Doc. 73-1 says Lambert agreed to withdraw the second Rule 11 matter. The signed July 8 Joint Status Report says he agreed to "withhold filing" the second proposed motion as part of a reciprocal discovery resolution. This is narrower and is not asserted to justify sanctions by itself.
3. **Exhibit C -> Exhibit D -> Exhibit L: purported prospective RFA cap** - Doc. 73-1 refers to an "agreement to limit Lambert's RFAs." The signed July 8 report resolves the then-outstanding RFA dispute but contains no express future numerical cap. Exhibit L supplies counsel's August 4 interpretation that the 38-RFA resolution was broader. That adverse context is included. Core question: signed text versus later interpretation.

**Stop point.** If the challenged formulations accurately reflect the sources, or any difference is immaterial, the remaining chronology should not be used to manufacture a sanctions theory. The secondary material matters only cumulatively.

## II. SECONDARY RULE 11(b)(1) - OBJECTIVE CHRONOLOGY

Exhibit A -> Exhibit B -> Exhibit C. Read the July 22 R&R, then Plaintiff's August 5 concession/narrowing, then the August 14 sanctions paper's request for an undefined prospective "cease" order and prefiling conditions. The sequence alone does not establish improper purpose. It matters only if combined with materially amplified factual predicates and the objective function of the relief requested.

## III. LIMITED DISCOVERY CONTEXT ONLY - RULE 11(d)

**G. July 29 individualized RFA answers -** The 38-request calibration produced substantive admissions, including no produced recruit/parent communication stating that a recruit declined Tennessee because of Lambert's content.

**H. July 31 recruit-focused RFP responses -** No responsive documents were identified in several recruit-causation, enrollment, and damages categories; Plaintiff also stated a reasonable search would be conducted for other recruiting communications.

**I. August 13 supplemental disclosures -** Newly identified people were described as persons who "may have viewed" publications and repeatedly assigned the generic subject "defamatory statements; falsity," creating new source-specific questions.

**K. August 13 supplementation request -** Lambert asked for meaningful supplementation before converting every new question into more RFAs/RFPs and expressly wrote: "I would rather not. A meaningful supplementation now will reduce the amount of written discovery required later."

**J. August 14 staggered roadmap -** The contemporaneous roadmap stated that its purpose was to avoid overlapping deadlines and address Plaintiff's repeated concerns regarding volume, burden, and timing.

**F. Secondary background -** Included for completeness, but not essential to the principal Rule 11(b)(3) theory.

**Rule 11(d) boundary.** No discovery request, response, objection, disclosure, or paper governed by Rules 26 through 37 is charged as a Rule 11 violation. These materials are context only because Doc. 73 itself used discovery as a sanctions predicate and because they illuminate source accuracy, chronology, and the materiality of the alleged RFA limitation.

## IV. RECOMMENDED READING ORDER

C -> E -> D -> L first. If those comparisons disclose no material source problem, stop. If they do, then read A -> B -> C for the secondary chronology. Use G/H/I/K/J only as limited context. This sequence keeps the presentation centered on proof rather than volume.

# EXHIBIT A

## July 22, 2026 Report and Recommendation - Rule 65 / First Amendment Analysis

**WHAT THIS EXHIBIT SHOWS**

The original breadth of requested prospective relief; the R&R's treatment of Plaintiff's narrowed request; findings that the request regulated speech, was not justified at that juncture, was overbroad, and constituted a prior restraint; refusal to adjudicate truth/falsity before the merits; recommendation of denial.

*ANNOTATION NOTICE: Yellow highlights and red rounded rectangles are demonstrative emphasis only. The reproduced source text is otherwise unaltered. Original-source page numbers remain visible where present.*

University of Tennessee or any other Division 1 collegiate program;

Original requested relief

(3) Publishing defamatory, disparaging, or offensive material that relates in any way to [Plaintiff] or his family, including but not limited to videos, photographs, music, blogs, interviews, or articles, on any social media platform, app, music streaming service, print media, mass media or digital media; and

Original requested relief

(4) Making any public statements about the present litigation, [Plaintiff], [Plaintiff's] family members, the University of Track and Field program, or any individuals other than [Plaintiff] that are affiliated in any way with the University of Tennessee Track and Field program.

[Doc. 2 pp. 1–2; *see also* Doc. 29 p. 7].

Because Plaintiff's proposed injunction seeks to prevent Defendant from making certain statements, the Court must first consider whether it constitutes a prior restraint in violation of the First Amendment. *See Williams v. Rigg*, 458 F. Supp. 3d 468, 475 (S.D. W. Va. 2020) ("As a preliminary matter, this Court must determine whether [the defendant's] First Amendment rights would be implicated by the issuance of an injunction on this basis.").

"The First Amendment prohibits 'abridging the freedom of speech,' and the United States Supreme Court has interpreted this prohibition to forbid, among other things, 'prior restraints.'" *Id.* at 476 (citations omitted). "[P]ermanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints." *Cnty. Sec. Agency v. Ohio Dep't of Com.*, 296 F.3d 477, 485 (6th Cir. 2002) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)); *see also Williams*, 458 F. Supp. 3d at 476 ("The United States Supreme Court has established that injunctions to enjoin libel are considered prior restraints." (citing *Tory v. Cochran*, 544 U.S. 734, 738 (2005)). The Sixth Circuit has explained, "[I]n the case of a prior restraint on pure speech, the hurdle is substantially higher: publication must threaten an interest more

fundamental than the First Amendment itself." *Cnty. Sec. Agency*, 296 F.3d at 485 (quoting *Procter & Gamble Co. v. Bankers Trust Co*., 78 F.3d 219, 226–27 (6th Cir. 1996)). The plaintiff's burden to establish that a prior restraint is warranted is heavy but "not impossible to overcome." *Id.* Even so, "[P]rior restraints on speech and publication are the most serious and least tolerable infringement on the First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

Plaintiff claims that "the relief sought is narrowly tailored to protect [him] from serious and consequential harm while placing only minimal limitations on Defendant Lambert's First Amendment right to free speech" [Doc. 2-1 p. 18].

Defendant responds that Plaintiff's injunction constitutes a prior restraint and that "[c]ourts almost never enjoin speech in advance, especially where damages or post-publication remedies exist" [Doc. 22 p. 4 (citation omitted)]. He claims that "Plaintiff does not narrowly tailor the requested relief[,]" but "[i]nstead, he seeks to broadly silence commentary, art, and expression relating to himself" [*Id.*]. "Such a request[,]" Defendant submits, "is facially unconstitutional" [*Id.*].

Plaintiff replies that his proposed injunction does not prohibit speech [Doc. 29 p. 7]. "Instead," Plaintiff seeks "to limit [Defendant's] potential conduct—not pure speech—that serves to protect his legitimate interests as well as those of the public at large" [*Id.*]. "Specifically," Plaintiff claims that he "requests that the Court (i) prohibit [Defendant] from any further direct contact with [him] via email, text or other similar electronic communications; (ii) enjoin [Defendant] from directly communicating with [Plaintiff's] employer (the University of Tennessee)], other schools with collegiate track and field programs that compete with the University of Tennessee, or any current or prospective track and field recruits of the University of

Tennessee about [Plaintiff]; and (iii) creating new deepfake AI generated videos or photographs of [Plaintiff] or his family members and publishing them on social media or other digital media platforms" [*Id.* at 7–8].

R&R on narrowed request

The undersigned is not convinced that Plaintiff's request does not regulate Defendant's speech. He asks the Court to enjoin Defendant from communicating with Plaintiff and others about Plaintiff, publishing statements about Plaintiff, and making any public statements about certain

R&R on narrowed request

topics [Doc. 2 p. 3; *see also* Doc. 29 p. 7]. In other words, he asks the Court to regulate Defendant's speech. *See Saidak v. Schmidt*, 501 F. Supp. 3d 577, 594 (E.D. Tenn. 2020) (finding the plaintiff's proposed injunction, "barring him from making any public comments about this litigation, [p]laintiff, Legends Brass, ORNL, Pickett Brass, Pickett-Blackburn Brass, the Church, or any other members of [p]laintiff's family" implicated the First Amendment because it sought to prohibit the defendant "from making certain statements"); *Williams*, 458 F. Supp. 3d at 480 (finding the plaintiff's request to enjoin the defendant from selling his book about the plaintiff to protect the plaintiff from reputational harm was "a direct encroachment upon the rights and guarantees embodied in the First Amendment"); *Banks v. Jackson*, No. 120CV02074, 2020 WL 6870739, at *1 (D. Colo. Oct. 2, 2020) ("Under the [p]laintiffs' requested injunction, the court would prohibit [the defendant] from speaking, writing, or publishing regarding the [p]laintiffs. This kind of prohibition is known in legalese as a 'prior restraint,' which 'is just a fancy term for censorship.'" (quoting *McCarthy v. Fuller*, 810 F.3d 456, 461 (7th Cir. 2015)).[5]

[5] Plaintiff relies on *Raymond James & Assocs., Inc. v. Saba*, No. 1:25-CV-10, 2025 WL 240986, at *5 (S.D. Ohio Jan. 17, 2025), in support of his argument [Doc. 29 p. 8]. But in that case, the court declined to "grant [p]laintiffs' broad request to enjoin [d]efendant's speech . . . because it would amount to a prior restraint before a final adjudication." 2025 WL 240986, at *5. Instead, the court entered an injunction restricting the defendant from accessing his fake email accounts or creating new email accounts to further his cyber-harassment campaign. *Id.* The

Given that, "the factors for granting a preliminary injunction essentially collapse into a determination of whether restrictions on First Amendment rights are justified to protect competing constitutional rights." *Saidak*, 501 F. Supp. 3d at 594 (quoting *Thompson v. Hayes*, 748 F. Supp. 2d 824, 831 (E.D. Tenn. 2010)).

Plaintiff does not argue that the injunction is warranted to prevent an interest more fundamental than the First Amendment itself. Instead, Plaintiff claims that "the relief sought is narrowly tailored to protect [him] from serious and consequential harm while placing only minimal limitations on Defendant Lambert's First Amendment right to free speech" [Doc. 2-1 p. 18]. That is not sufficient to restrict Defendant's First Amendment rights at this juncture. *See Cnty. Sec. Agency*, 296 F.3d at 485 ("A prior restraint is permissible if the restrained speech poses 'a grave threat to a critical government interest or to a constitutional right.'" (quoting *Procter & Gamble*, 78 F.3d at 225, 227)); *CBS Inc. v. Young*, 522 F.2d 234, 238 (6th Cir. 1975) ("[T]o justify imposition . . . of a prior restraint, the activity restrained must pose a clear and present dangerous threat to a protected competing interest." (citations omitted)); *see also Banks*, 2020 WL 6870739, at *1 (finding that the plaintiffs' request that the court prohibit the defendant from speaking, writing, or publishing about the plaintiffs is a "prior restraint [that] has been roundly rejected" (citation omitted)); *Thompson*, 748 F. Supp. 2d at 831 (finding the plaintiffs' alleged harm "these communications have done and will do to plaintiffs' business interests and their reputations . . . cannot override defendant's First Amendment rights" (citation omitted)).

Moreover, although Plaintiff characterizes his proposed injunction as "narrow in scope" [Doc. 2 p. 2], the Court finds otherwise. Plaintiff seeks to enjoin Defendant from sending

undersigned therefore finds this case inapposite and not supportive of Plaintiff's requested injunction here.

"defamatory or disparaging statements" to various individuals and entities [*Id.*] "An injunction against defamatory statements, if permissible at all, must not through careless drafting forbid statements not yet determined to be defamatory, for by doing so it could restrict lawful expression." *McCarthy*, 810 F.3d at 462. He also seeks to enjoin Defendant from "[m]aking any public statements" about certain topics [Doc. 2 p. 2; *see also* Doc. 29 pp. 7–8]. This is overly broad. *See Tory v. Cochran*, 544 U.S. 734, 736 (2005) (finding an injunction that prohibited the plaintiffs from "orally uttering statements" about the defendant and his law firm in "any public forum" was overly broad and "lack[ed] plausible justification" (citations omitted)); *see also Renoir-Large v. Lane*, No. 2:11-CV-0023, 2011 WL 3667424, at *4 (S.D. Ohio July 20, 2011) (finding the plaintiffs' injunction was overly broad because it "impose[d] restrictions that capture[d] activity that is not defamatory"), *report and recommendation adopted*, No. 2:11-CV-0023, 2011 WL 3678177 (S.D. Ohio Aug. 22, 2011).

Overbreadth / prior restraint

The undersigned therefore finds that Plaintiff's request for an injunction constitutes a prior restraint, and he has not shown at this juncture that Defendant's speech threatens an interest more fundamental than the First Amendment itself. *See Studiorotan LLC v. Howell*, No. 2:25-CV-20, 2025 WL 3041940, at *11 (N.D. Ala. Oct. 31, 2025) ("[I]t would be extraordinary for a federal court to enter a preliminary injunction on a defamation claim." (citation omitted)); *Goodson v. Republican State Leadership Comm. - Jud. Fairness Initiative*, No. 4:18-CV-791, 2018 WL 6430825, at *3 (E.D. Ark. Nov. 1, 2018) ("It appears wholly unprecedented, however, for a federal court to enter a *preliminary* injunction in a defamation case. In those defamation cases upholding the constitutionality of restraints on future speech, the injunctions were entered *after*

the claims were adjudicated on the merits, and the injunctions were limited to the speech that was *actually found* to be defamatory by the fact-finder." (citations omitted)).[6]

Considering this finding, the undersigned need not separately address the four factors relevant to a request for an injunction. *See Williams*, 458 F. Supp. 3d at 480 ("[R]uling on this preliminary injunction request would require this [c]ourt to pass judgment on the falsity of [the defendant's] speech and the potential damage this speech may cause to [the plaintiff's] reputation. The [c]ourt declines to make such a finding before a final determination on the merits and is unable to make such a determination on the record currently before it."); *see also Studiorotan LLC*, 2025 WL 3041940, at *11 (denying motion for preliminary injunction and refusing to "pass judgment on the truth or falsity of [defendant's] speech and its potential harm" (quoting *Williams*, 458 F. Supp. 3d at 479)); *Am. Univ. of Antigua Coll. of Med. v. Woodward*, 837 F. Supp. 2d 686, 690 (E.D. Mich. 2011) ("The Court did not make a finding with regard to [the plaintiff's] likelihood of success on its defamation claim, but denied injunctive relief based on that claim due to the First Amendment's heavy presumption against prior restraints and nearly two centuries of widespread acceptance at common law that equity will not enjoin a defamation." (citation modified and

No pre-merits falsity finding

[6] Plaintiff relies on *Lothschuetz v. Carpenter*, 898 F.2d 1200, 1206, 1209 (6th Cir. 1990), and *In re Conservatorship of Turner*, No. M2013–01665–COA–R3–CV, 2014 WL 1901115, at *20 (Tenn. Ct. App. May 9, 2014), stating that they recognize or adopted the "modern rule" that permits injunctions restricting defamation [Doc. 2 p. 2]. But the modern rule to which Plaintiff refers relates to courts entering injunctions after a determination on the merits. *Saidak*, 501 F. Supp. 3d at 595; *see also Williams*, 458 F. Supp. 3d at 477 ("Six federal circuit courts of appeal have held that injunctions are permissible to prevent libel, but only after a finding on the merits that the speech is unprotected." (collecting cases and footnote omitted)); *Renoir-Large*, 2011 WL 3667424, at *4 ("Here, although the usual rule provides that defamation may be remedied only by an action for damages, even application of the modern rule bars plaintiffs' requested injunction" because "there has been no final determination that defendant's statements are false and libelous." (citing *Lothschuetz,* 898 F.2d at 1206)).

citations omitted));.*Thompson*, 748 F. Supp. 2d at 831 (finding the plaintiffs' request to enjoin the defendant's speech was an impermissible prior restraint without considering the four factors).

## V. CONCLUSION

For the reasons explained above, the undersigned **RECOMMENDS**[7] that the District Judge **DENY** Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction Against Defendant Greg Lambert [**Doc. 2**].

Respectfully submitted,

Jill E. McCook
United States Magistrate Judge

[7] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987).

# EXHIBIT B

## August 5, 2026 Objection to Report and Recommendation

**WHAT THIS EXHIBIT SHOWS**

Plaintiff's post-R&R reframing: regulation of how/to whom communications are sent rather than what may be said; express concession that original public-statement/commentary relief was impermissible at the preliminary-injunction stage; narrowed channel/recipient relief.

*ANNOTATION NOTICE: Yellow highlights and red rounded rectangles are demonstrative emphasis only. The reproduced source text is otherwise unaltered. Original-source page numbers remain visible where present.*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | | |
|---|---|---|
| RANDOLPH DUANE ROSS,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY B. LAMBERT,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:26-cv-00013 |

**OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION RELATING TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Randolph Duane Ross ("Ross"), pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), objects to the Report and Recommendation entered on July 22, 2026 (the "Recommendation") recommending the denial of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction[1] ("Motion").

**INTRODUCTION**

The Recommendation is predicated on the faulty premise that the injunctive relief Ross seeks amounts to a prior restraint on pure speech.[2] But the Magistrate failed to address the narrow

Post-R&R framing

relief Ross is actually pursuing. Ross does not ask this Court to decide what Defendant Gregory B. Lambert ("Lambert") may say or where he may say it. As specified in his reply and during oral

Post-R&R framing

argument,[3] Ross seeks an order regulating *how and to whom Lambert transmits* his communications—not the content of the communications. Lambert would remain free to release music on Apple Music and Spotify, to post on Instagram and Facebook, to give interviews, to

[1] Doc. 2 (Motion).

[2] Doc. 66 (Recommendation) at 29-33.

[3] Doc. 29 (Reply Brief) at 7-8; Doc. 69 (June 30 Transcript) at 159-61.


D-R11-EX-010

comment on this litigation, and to criticize Ross by name in any public forum. What he should not be permitted to do is push those communications into the personal phone and inbox of an unwilling recipient (*i.e.*, Ross), into the inboxes of Ross's employer and rival universities, and into the inboxes of teenage recruits and their parents.

The critical distinction between pure speech and conduct relating to speech was drawn in *Raymond James & Associates, Inc. v. Saba*, 2025 WL 240986 (S.D. Ohio Jan. 17, 2025), which the Recommendation summarily brushes aside (in a footnote) as "inapposite."[4] On materially similar facts, and applying the same legal authorities the Magistrate relies upon, the *Raymond James* court *granted plaintiff's request for an injunction in part and denied it in part*. That court refused to enjoin the defendant's future speech while simultaneously enjoining the means—the accounts, the channels, the proximity—through which the defendant communicated with the plaintiff and various third-parties. *Id.* at *5, *7-8 (In entering an injunction that restricted the defendant's use of email to contact the plaintiff, his employer, and other third-parties, the court "[focus[ed] upon Defendant's potential conduct—rather than pure speech." ).

Plaintiff objects to the Recommendation as follows:

(i) The Recommendation focuses exclusively on Ross's broad request for relief outlined in his original Motion while improperly failing to consider the more narrowly tailored aspects of the relief Ross addressed in his reply brief and at the preliminary injunction hearing;

(ii) Restricting the delivery of unsolicited communications to specifically identified recipients (Ross, the University of Tennessee's ("UT") administration and employees, and UT's existing athletes and recruits) is not a prior restraint on pure

[4] Doc. 66 (Recommendation) at 29 n.5.

speech; it is a content-neutral restriction on the means of delivery of such communications (*i.e.*, conduct). *Rowan v. U.S. Post Office Dep't*, 397 U.S. 728, 736 (1970); *Wilcher v. Warren County, Tennessee*, 2016 WL 10590201, at * 8 (E.D. Tenn. Dec. 28, 2016);

(iii) The district court's holding in *Raymond James* is not inapposite. It is a factually analogous and instructive case that demonstrates the prior-restraint doctrine constrains the *scope* of pre-trial injunctive relief, not its *availability*.

(iv) The Magistrate erred in declining to reach the *Certified Restoration* factors[5] in evaluating Ross's request for a preliminary injunction. The "collapse" principle of *County Security Agency v. Ohio Department of Commerce*, 296 F.3d 477, 485 (6th Cir. 2002) that the Magistrate relied upon only applies where the requested relief infringes upon the protections of the First Amendment; it does not excuse analysis of the factors where, as here, the requested relief is legally permissible.

To remove any doubt about scope, and consistent with *Lothschuetz v. Carpenter*, 898 F.2d 1200, 1206, 1208 (6th Cir. 1990), Ross concedes the relief requested in paragraphs (3) and (4) of the Motion[6] is impermissible at the preliminary injunction phase insofar as it would enjoin the publication of public statements or commentary by Lambert. But that is not what Ross is presently seeking. Ross requests that the Courts merely restrict Lambert's means of communicating with Ross, his employer, and certain third-parties.

[5] Federal courts consider four factors when deciding whether to issue a preliminary injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the issuance of an injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.* 511 F.3d 535, 543-50 (6th Cir. 2007)

[6] Doc. 2 (Motion) at 3; Doc. 66 (Recommendation) at 27.

## LEGAL ARGUMENT

**A. <u>Standard of Review</u>**

District courts must consider *de novo* those portions of a magistrate's recommendation that are properly objected to by a litigant, and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1); *see also Thomas v. Arn*, 474 U.S. 140, 149-50 (1985).

**B. The Recommendation Focuses on the Broadly Worded Requests in the Motion while <u>Ignoring the Narrowed Relief Ross Actually Seeks</u>.**

The Recommendation focuses exclusively on the (admittedly) broad requests for injunctive relief contained in the Motion without taking into account Ross's narrowed requests. In fact, the Magistrate acknowledges Ross's narrowed requests but then reverts to the original Motion in the analysis: "He asks the Court to enjoin Defendant from communicating with Plaintiff and others about Plaintiff, publishing statements about Plaintiff, and making any public statements about certain topics."[7] [*Id.* at 29]. The overbreadth discussion likewise addresses the text of the original Motion—"defamatory or disparaging statements" and "[m]aking any public statements."[8]

Trial courts can (and should) pare down a movant's broad request for injunctive relief to the extent possible, particularly where (as here) the opposing party is purposefully engaging in a campaign of demonstrably improper conduct that is likely to irreparably harm the moving party. That is what the *Raymond James* court did when it took a request seeking to bar the defendants from "[p]ublishing defamatory material about them" and narrowed it to conduct-based restrictions. 2025 WL 240986 at *4-5, *8. In this case, and similar to the injunction entered in *Raymond James*,

---

[7] Doc. 66 (Recommendation) at 29.

[8] *Id*. at 30-31.

Narrowed prospective relief

Ross seeks three principal things: (i) no direct contact by Lambert with Ross; (ii) no direct contact by Lambert through email, text, or similar means with UT's administration, employees or track and field athletes, competing collegiate programs, or current and prospective recruits; and (iii) no creation of new AI-fabricated videos or photographs of Plaintiff or his children.[9] None of these restrictions limit *what* Lambert may say (*i.e.*, his speech). The first two limit *how* he may communicate. The third addresses the creation of fabricated images of certain identifiable individuals and any minor children—on this record, altered photographs of Ross's children[10] and fabricated depictions of Ross engaging in sexually suggestive acts with Sean Combs, Jeffrey Epstein and his own attorneys, and of Ross in prison.[11]

The Magistrate's overbreadth analysis—*McCarthy v. Fuller*'s warning against drafting that forbids "statements not yet determined to be defamatory," 810 F.3d 456, 462 (7th Cir. 2015), *see also Tory v. Cochran*, 544 U.S. 734, 736 (2005)—is well taken as to paragraphs (3) and (4) in the Motion. But the analysis has no application to the no-contact provisions requested by Ross, which do not turn on whether any particular statement is true or false.

### C. An Injunction Restricting the Channel of Targeted Unsolicited Communications is Not a Prior Restraint on Pure Speech.

The prior-restraint doctrine addresses orders forbidding *publication* before an adjudication on the merits. *Lothschuetz*, 898 F.2d at 1208-09 (reversing trial court and granting permanent injunction preventing defendants from publishing statements previously found to be defamatory). Its concern is that "communication will be suppressed…before an adequate determination that it is unprotected." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376,

[9] Doc. 29 (Reply) at 7-8.

[10] Doc. 44 (Redacted Complaint) at 39; Doc. 69 (June 30 Transcript) at Exs 4, 11.

[11] *Id.* at 47-48; Doc. 69 ( June 30 Transcript) at Exs. 15, 16.

# EXHIBIT C

## August 14, 2026 Legal Memorandum in Support of Plaintiff's Motion for Sanctions (Doc. 73-1)

**WHAT THIS EXHIBIT SHOWS**

The challenged paper: categorical concession/admission language, undefined prospective cease request, characterization of the second Rule 11 matter and July RFA resolution, use of unresolved discovery as a sanctions predicate, and request for prefiling restrictions.

*ANNOTATION NOTICE: Yellow highlights and red rounded rectangles are demonstrative emphasis only. The reproduced source text is otherwise unaltered. Original-source page numbers remain visible where present.*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
TENNESSEE NORTHERN DIVISION

| | | |
|---|---|---|
| RANDOLPH DUANE ROSS,<br><br>Plaintiff,<br>v.<br><br>GREGORY B. LAMBERT,<br><br>Defendant, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br>Case No.: 3:26-cv-00013 |

**LEGAL MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANT GREGORY B. LAMBERT**

Plaintiff Randolph Duane Ross ("Ross") files this legal memorandum in support of his Moton for Sanctions Against Defendant Gregory B. Lambert ("Lambert") and respectfully states as follows:

**INTRODUCTION**

Litigation is not an Internet message board. Parties can be combative, zealous, and emotional. However, all parties, including those representing themselves, are required to abide by the Federal Rules as well as to act professionally and respectful to opposing counsel and the Court. Indeed, it is well settled that if a party takes it upon himself to proceed *pro se*, "then that party becomes subject to the same rules governing all filers and sanctions can be imposed if the party litigates in bad faith, vexatiously, wantonly, or for oppressive reasons." *In re Jones*, 632 B.R. 138, 149 (Bankr. S.D. Ohio 2021) (*citing Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988) ("[*P*]*ro se* filings do not serve as an 'impenetrable shield [from sanctions], for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.")). Yet since the outset of this litigation, Lambert has purposefully harassed Ross, his counsel, and various third parties with sexually suggestive fake AI-generated

Everything." *Id*. Lambert's continuing campaign of harassment has now ensnared this Court and its staff and must be stopped.

**Lambert Has Wasted Ross's and the Court's**
**<u>Time and Resources with Frivolous Motions</u>**

Lambert has filed frivolous motions in bad faith that were intentionally designed to waste Ross's and the Court's time and resources. For example, the Complaint included a copy of a digitally-altered photograph that *Lambert* had previously posted publicly online. (Doc. 1 at ¶ 39). The photograph depicted Ross's minor children and Lambert's minor son, but no personally identifiable information. On April 30, 2026, Lambert filed an "emergency" Rule 5.2(a) motion to seal the Complaint and for sanctions—seeking attorney's fees against Ross and the referral of Ross's counsel to the Tennessee Board of Professional Responsibility. (Doc. 41). Ross responded by arguing, among other things, that Lambert had waived any right to redaction on privacy grounds given that Lambert had *posted the picture in the public domain himself* prior to the initiation of the present lawsuit. (Doc. 45). The Court, while declining to sanction Ross or his counsel, nevertheless granted Lambert's motion and specifically admonished Ross, stating that "[u]nnecessary public disclosure of [minors'] identities will not be tolerated." *Id*. Ross, pursuant to the Court's directive, filed a redacted Complaint removing the photograph on May 6, 2026. (Doc. 44)

Court granted substantive sealing relief

Yet, on May 18, 2026, less than two weeks later, Lambert inexplicably emailed a copy of the *sealed Complaint* (which contained the very photograph that formed the basis of his sanctions request against Ross and his counsel) to UT's Athletic Director and copied approximately 170 media outlets. Ex. 12. In summary, Lambert: (i) publicly published a picture of his own minor child on various social media platforms; (ii) decried Ross's subsequent inclusion of that same photograph (taken from Lambert's own posts) in a public filing and demanded that the pleading be sealed to protect his minor child's right to privacy; (iii) sought sanctions against Ross and his

counsel as a result of their use of the photograph in a public filing; yet (iv) transmitted an unredacted copy of Ross pleading to 170 members of the media approximately two weeks *after* it had been sealed for the express purpose of garnering media attention in this case. Lambert's Categorical characterizations conduct clearly and unequivocally demonstrates that his "emergency" motion was nothing more than a frivolous ruse designed to unfairly portray Ross in a negative light. Lambert not only unnecessarily expanded this litigation and increased Ross's expenses but callously wasted this Court's time.

Lambert has also abused Rule 11 in order to drive up Ross's legal fees. On April 29, 2026, Lambert filed a patently frivolous Rule 11 Motion. (Doc. 38). As explained in Ross's response, the Rule 11 Motion is both procedurally and substantively defective. (Doc. 47). But even assuming the Court ultimately denies Lambert's frivolous Rule 11 Motion (and the Court should), Ross has nonetheless been forced to waste time and resources responding to the motion. On July 1, 2026, Lambert served Ross with another baseless Rule 11 motion, this time claiming that Exhibit 1 to the Complaint (which Lambert admits *he* created) was not authenticated and disputing subjects raised in Ross's testimony at a hearing on June 30, 2026, which are privileged. Ex. 13. While Categorical characterizations Lambert later agreed to withdraw his second Rule 11 Motion, Ross's counsel again was forced to spend time and effort addressing these frivolous issues. On July 26, 2026, Lambert served Ross with a third Rule 11 Motion demanding that certain allegations in the Complaint be amended or withdrawn. Ex. 14. Ross has declined to entertain the unsupported demands in Lambert's Third Rule 11 Motion, despite Lambert's continued threats to file it. Lambert's three separate Rule 11 Categorical characterizations Motions are borderline nonsensical and frivolous, yet each has had the desired effect of wasting Ross's (and the Court's) time and needlessly driving up the costs of this litigation.

Source-accuracy / discovery language

Lambert has expressly admitted that his abusive litigation strategy is solely designed to drive up Ross's legal expenses. On May 21, 2026, Lambert sent yet another rambling email to Ross, Ross's counsel, and several UT employees gloating about the costs of this litigation. Ex. 15 at 6 ("Defendant is not your biggest problem…[y]our invoice is"). Lambert's own words demonstrate that his bevy of filings (and threatened filings) are purely designed to harass Ross, deter him from litigating this case, and dramatically and unnecessarily increase his attorneys' fees.

**Lambert Has Abused Discovery to Waste Plaintiff's Time, Intentionally Increase <u>Plaintiff's Legal Expenses, and Improperly Leverage Dismissal of this Case</u>**

Source-accuracy / discovery language

The Parties are separately addressing numerous outstanding discovery disputes as required by the Federal Rules and this Court's Scheduling Order (Doc. 23); Ross is not seeking to adjudicate any discovery issues through this motion. However, Lambert's abusive discovery tactics are part of his larger pattern of outrageous and sanctionable behavior. From March to June 2026, Lambert served Ross with *over 1000* Requests for Admission ("<u>RFAs</u>"), the vast majority of which are legally deficient under Rule 36. *See, e.g.* Ex. 16 (Plaintiff's Objections to Lambert's Third, Fourth, and Fifth Sets of Requests for Admission). While these RFAs are clearly excessive, Ross's counsel was nevertheless required to spend hours of attorney time analyzing the requests, responding with general and specific objections, meeting and conferring with Lambert, filing position statements with the Magistrate, and attending judicial conferences. On July 7, 2026, and pursuant to the Parties' agreement, Lambert withdrew all of his previous RFAs and reissued a single set of 38 RFAs to be answered by Ross. Ex. 17 (July 8, 2026 Joint Status Report to Judge McCook). On

Source-accuracy / discovery language

July 29, 2026, Ross answered Lambert's reissued RFAs. But despite the agreement to limit Lambert's RFAs, Lambert continues to inundate Ross with additional requests. Specifically, Lambert served 46 RFAs on July 26, 48 RFAs on July 30, and 24 RFAs on August 3, 2026. When Ross informed Lambert he would not entertain Lambert's continued abusive discovery, Lambert

responded: "If Ross does not want to answer them, he has an extremely efficient option: **Dismiss the case**." Ex. 18 (emphasis in original). Again, while Ross will address Lambert's specific objectionable discovery in accordance with the Federal Rules and this Court's mandated discovery procedure, is it clear that Lambert has weaponized the discovery process as part of his overall strategy to harass Ross. By continuing to bombard Ross with excessive and overly burdensome discovery, Lambert has dramatically increased Ross's litigation expenses. Lambert's actions are making a mockery of this litigation and require the imposition of significant sanctions.

Unresolved discovery used as sanctions predicate

## LEGAL ARGUMENT

### I. <u>Legal Standard</u>

Federal law provides for an award of costs and fees where an attorney has "multiplied proceedings in any case unreasonably or vexatiously. 28 U.S.C. § 1927. While the text § 1927 only applies to attorneys or persons allowed to conduct cases, courts in the Sixth Circuit have applied § 1927 against pro se litigations. *See Gitler v. Ohio*, 632 F.Supp.2d 722, 724 (N.D. Ohio 2009) (collecting cases). Courts employ sanctions under § 1927 "to deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006).

In addition to 28 U.S.C. § 1927, federal courts "are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn*, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821). A court may exercise its inherent power to sanction when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons, or when the conduct is tantamount to bad faith." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (cleaned up). This authority is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so

as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962). Where other rules may only reach certain individuals or conduct, the Court's "inherent power extends to a full range of litigation abuses." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991).

Pro se litigants are not afforded any special protection from the Court's inherent authority and may not disregard the law or engage in abusive conduct. *Jamar-Mamon v. Univ. of Cincinnati*, 758 F.Supp.3d 756, 764 (S.D. Ohio 2024). Additionally, pro se parties are expected to be familiar with and follow the Federal Rules of Civil Procedure and the local rules of this Court. LR83.13. An award of fees either under § 1927 or under the court's inherent powers rests in the sound discretion of the trial court. *Jones v. Continental Corp.*, 789 F.2d 1225, 1229 (6th Cir.1986).

**II. <u>The Court Should Sanction Lambert</u>.**

**A. Lambert should be sanctioned under 28 U.S.C. § 1927**

It is indisputable that Lambert has unreasonably and vexatiously multiplied the proceedings in this case. As explained above, Lambert has (1) sent dozens of harassing and inappropriate communications and AI images to Ross, his counsel, Ross's employer, and this Court; (2) filed, or has threatened to file, frivolous Rule 11 motions and filed his Motion to Seal (Doc. 41) under false pretenses; and (3) has inundated Ross with excessive and unreasonable discovery requests.

Purported literal concession

Lambert has explicitly conceded that his intentions are to increase Ross's attorney fees, and financially pressure Ross into dropping his suit against Lambert. This is the exact conduct that § 1927 is designed to sanction. *See Sater*, 465 F.3d at 647 (upholding sanctions under both § 1927 and the court's inherent authority because counsel's "actions were taken, at the very least, in the face of an obvious risk that he was increasing the work on the other party without advancing the litigation."). In this case, Lambert's abusive litigation tactics have, within just seven months of

commencing this case, exponentially multiplied the cost of this litigation for no reason other than to harass Ross into dropping his suit. The Court should condemn such abusive practices by levying reasonable sanctions against Lambert pursuant to § 1927.

### B. The Court should exercise its inherent authority to control this litigation and impose sanctions against Lambert.

It is also appropriate for the Court to sanction Lambert's abusive and bad faith conduct through the Court's inherent power. *Bentkowski v. Scene Magazine*, 637 F.3d 689, 697 (6th Cir. 2011). The Court "has inherent authority to sanction pro se litigants for engaging in frivolous and harassing litigation conduct." *Gueye v. U.C. Health*, 2014 WL 4894173, at *6 (S.D. Ohio Oct. 6, 2014). A party's *pro se* status does not excuse them from showing appropriate courtesy and respect to opposing counsel, nor are they permitted to make ad hominem attacks on opposing counsel. *Id.*, at *5.

Courts have not hesitated to use their inherent power to sanction pro se litigants that engage in abusive litigation tactics similar to Lambert. *See e.g., Nguyen v. Biter*, 2015 WL 366932 (E.D. Cal. Jan. 27, 2015) (sanctioning pro se litigant for sending inappropriate and harassing communications to opposing counsel); *Blum v. Schlegel*, 1996 WL 925921, at *8 (W.D.N.Y. May 9, 1996), *aff'd*, 108 F.3d 1369 (2d Cir. 1997) (sanctioning pro se litigant for sending letters to third parties disparaging opposing counsel and the presiding judge). In this case, it is indisputable that Lambert has engaged in a number of abusive litigation tactics by: (1) sending insulting and obscene messages to Ross, Ross's counsel, and third parties such as Ross's employer; (2) sending sexually-suggestive AI-generated pictures depicting Ross and his counsel to third parties, including this Court; (3) filing and threatening to file frivolous motions with the Court; (4) inundating Ross with

Repeated concession language

thousands of inappropriate discovery requests. Lambert has conceded that these abusive tactics are designed to waste counsel's time, exponentially increase Ross's legal fees, and force Ross to

dismiss his case voluntarily. Ross and his Counsel have exhausted every option to persuade Lambert to control his behavior, but he has refused. Accordingly, the Court must sanction his behavior pursuant to its inherent authority to control this litigation.

### III. The Court Should Impose Attorney's Fees and Pre-filing Conditions on Lambert

In order to deter Lambert from engaging in this behavior, the Court should impose reasonable attorney's fees. A district court has the inherent power to issue sanctions, including attorney's fees, to deter misconduct. *Wesco Ins. Co. v. Roderick Linton Belfance, LLP*, 39 F.4th 326, 337 (6th Cir. 2022). In this case, Lambert's abusive litigation has caused Ross's counsel to waste dozens of hours of attorney time reviewing and responding to frivolous motions, discovery requests, and preparing this Motion itself. Accordingly, Ross requests that the Court award him his reasonable attorneys' fees incurred as result of Lambert's abusive litigation tactics. Failing to impose significant sanctions against Lambert will only serve to reward Lambert and encourage similar conduct going forward.

Prospective filing gate

Prospective filing gate

Ross also requests that the Court impose prefiling restrictions on Lambert and require Lambert to seek leave of the Court before filing additional motions, which he has continuously threatened to do. The Sixth Circuit has approved various prefiling restrictions for harassing and vexatious litigators under a court's inherent authority. *See, e.g., Filipas v. Lemons*, 835 F.2d 1145 (6th Cir. 1987).

## CONCLUSION

Lambert's continued abusive litigation conduct is not only directed at Ross, his counsel, and third parties. It also makes a mockery of this litigation, the Federal Rules, and the judicial process. Accordingly, Ross requests that the Court sanction Lambert pursuant to 28 U.S.C § 1927

and the Court's inherent authority and levy attorney's fees and prefiling restrictions in order to deter similar conduct from Lambert in the future.

Requested relief

Dated: August 14, 2026

*/s/ Ryan McMillan*
Gregory F. Coleman (BPR # 014092)
S. Jarret Raab (admitted *pro hac vice*)
Ryan McMillan (BPR # 030542)
COLEMAN LAW, PLLC
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Tel. 865.407.0529
gcoleman@gregcolemanlaw.com
jraab@gregcolemanlaw.com
rmcmillan@gregcolemanlaw.com
*Counsel for Plaintiff Randolph Duane Ross*

# EXHIBIT D

## July 8, 2026 Joint Status Report Regarding Outstanding Discovery Issues

**WHAT THIS EXHIBIT SHOWS**

The signed text resolving the then-outstanding RFA dispute, requiring request-by-request answers, requiring Plaintiff to supplement witness categories and conduct a good-faith document search, and stating that Lambert would "withhold filing" the second proposed Rule 11 motion. The text contains no express prospective RFA cap.

*ANNOTATION NOTICE: Yellow highlights and red rounded rectangles are demonstrative emphasis only. The reproduced source text is otherwise unaltered. Original-source page numbers remain visible where present.*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | | |
|---|---|---|
| RANDOLPH DUANE ROSS,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY B. LAMBERT,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.3:26-cv-00013 |

## JOINT STATUS REPORT REGARDING OUTSTANDING DISCOVERY ISSUES

Plaintiff Randolph Duane Ross ("Ross") and Defendant Gregory B. Lambert ("Lambert") (collectively, the "Parties") submit this joint status report and respectfully state as follows:

1. The Parties met and conferred on July 7, 2026 with respect to the various outstanding discovery issues addressed during the Court's June 30, 2026 informal discovery conference.

2. The Parties have resolved their dispute concerning the outstanding requests for admission ("RFAs") propounded by Lambert. Specifically, Lambert withdrew all previously issued RFAs and served Ross with an amended and reissued set of 38 RFAs on July 1, 2026. Ross will respond to each on a request-by-request basis.

3. The Parties have resolved their dispute concerning Ross's Rule 26(a)(1) initial disclosures. Ross has agreed to supplement his Rule 26(a)(1)(i) list of individuals likely to have discoverable information, including but not limited to the identity of University of Tennessee Track & Field recruits with relevant knowledge, Lambert's past employers, and those individuals that raised complaints regarding Lambert's behavior while Lambert was employed by the University of Tennessee.

Signed language

4. Ross has agreed to make a good faith search for all discoverable documents responsive to Lambert's previously served requests for production and will produce all discoverable documents in his possession or control.

Signed language

5. Lambert has agreed to withhold filing his second proposed Rule 11 motion for sanctions.

*/s/ S. Jarret Raab*
Gregory F. Coleman (BPR # 014092)
S. Jarret Raab*
Ryan McMillan (BPR # 030542)
COLEMAN LAW, PLLC
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Tel. 865.247.0080
gcoleman@gregcolemanlaw.com
jraab@gregcolemanlaw.com
rmcmillan@gregcolemanlaw.com

* Admitted *Pro Hac Vice*

*Counsel for Plaintiff Randolph Duane Ross*

*s/ Gregory Bernard Lambert*
Gregory Bernard Lambert
7218 Single Wheel Path
Columbia, Maryland 21046
Tel. 410.336.4538
lalambert1982@gmail.com
*Pro Se Defendant*

**DEMONSTRATIVE NOTE: The signed report does not state a prospective numerical cap on later RFAs.**

# EXHIBIT E

## May 21, 2026 Gmail Source Excerpt - Cost Rhetoric and Rule 36 Rationale

**WHAT THIS EXHIBIT SHOWS**

Adverse context is included. The source contains "Every objection carries a cost," "That is the trap," and "Your invoice is" rhetoric. It also documents the 314-to-75 reduction, Rule 36 deadline and purpose, asserted relevance, meet-and-confer posture, and record-narrowing rationale. The comparison addresses inference versus literal sole-purpose concession.

*ANNOTATION NOTICE: Yellow highlights and red rounded rectangles are demonstrative emphasis only. The reproduced source text is otherwise unaltered. Original-source page numbers remain visible where present.*

# SOURCE EXCERPT — MAY 21, 2026 GMAIL COMMUNICATION

**Ryan McMillan copied on the source communication | excerpt page 1 of 3**

| | |
|---|---|
| **From** | Greg Lambert <lalambert1982@gmail.com> |
| **To** | Jarret Raab <JRaab@gregcolemanlaw.com>; Gregory Coleman <gcoleman@gregcolemanlaw.com> |
| **Cc** | Ryan McMillan <RMcMillan@gregcolemanlaw.com>; Lisa Maxwell <lmaxwell@gregcolemanlaw.com>; rross25@utk.edu; athleticdirector@utk.edu; mhillia1@utk.edu; ryanstinnett@tennessee.edu; mike.fitzgerald@tennessee.edu; plawson9@utk.edu; qsmith7@utk.edu; irodrig6@utk.edu; nsommers@utk.edu; vip@utk.edu; ncowan@utk.edu |
| **Date** | May 21, 2026, 3:44 PM ET |
| **Subject** | Re: Public record & concern |
| **Gmail message ID** | 19e4c10f8be1df05 |

**SOURCE / LIMITATION NOTE:** *This excerpt reproduces selected portions of the connected Gmail message in which Ryan McMillan was a CC recipient. Omitted portions are marked by bracketed omission notices. The purpose is source comparison, not to imply that omitted text did not exist.*

**RFA reduction / relevance context**

While you've been over there playing with settlement "parameters," I should probably let you know what the actual live issue is.

Because right now you're trying to tune the radio while the engine light has been on for miles. 🚨

On April 28, Defendant served a revised set of 75 Requests for Admission on Coleman Law. Not 314. Seventy-five. A voluntary 76% reduction. That was not noise. That was precision. I narrowed the set, organized the issues, and served a cover letter explaining the relevance structure across the nine subject-matter blocks so nobody could later put on a surprised face and ask what any of this was about.

Your office acknowledged receipt in two minutes.

Two.

So let's retire the fairy tales now. These requests did not get lost, delayed, misplaced, or dragged into the woods by procedural goblins. They arrived. Fast. Clean. Recorded. 📬

Then, that same day, you confirmed in writing that the parties had reached an impasse and that you would let the Court decide.

That mattered more than maybe you realized.

Because once you put the impasse in writing, the meet-and-confer issue was satisfied from my side of the record. The protective-order path your client previously tried had already been denied without prejudice for failure to comply with Judge McCook's procedure. It has not been re-filed. No conference has been requested. No procedural rescue helicopter is circling overhead.

*[Excerpt continues on source-excerpt page 2.]*

Normalized from connected Gmail for evidentiary readability; wording reproduced from the retrieved message.

# SOURCE EXCERPT — MAY 21, 2026 GMAIL COMMUNICATION

**Ryan McMillan copied on the source communication | excerpt page 2 of 3**

**SOURCE / LIMITATION NOTE:** *Continuation of the same May 21, 2026, 3:44 PM ET Gmail message. This portion is included because the August 14 sanctions memorandum characterized the communications as an express concession of improper purpose; the excerpt preserves both the Rule 36 rationale and the cost rhetoric.*

So while you've been focusing on settlement, this is what has actually been happening.

Federal Rule of Civil Procedure 36(a)(3).

A matter is admitted unless a written answer or objection is served within 30 days.

Thirty days from April 28 is May 28, 2026.

That is seven days from today.

And from here, there are only two roads.

If you do not respond, Defendant files a Notice of Deemed Admissions on May 29 and asks the Court to place those admissions on the record before the June 30 hearing. Seventy-five matters. Admitted by operation of law. Built from your client's own sworn filings, his employment contract, the Ekanem AIU record, the February 27 call documentation, the salary materials your side submitted, and the Luedeka Neely content-removal pattern.

**Cost rhetoric and Rule 36 context**

If you do respond, then those responses become part of the June 30 record.

Because objections are not magic. They are not a smoke bomb. They are not holy water. They do not make bad facts disappear just because somebody typed "vague," "ambiguous," or "calls for a legal conclusion" with confidence.

Some objections are fine.

Some objections are expected.

But some objections, in this posture, would look exactly like what they are: a refusal to engage with clean, targeted requests tied directly to your client's own filings and the theory of harm he is asking the Court to credit.

That is the part you need to understand.

Every objection carries a cost here.

If you object too broadly, it looks like you are protecting your client from his own record.

If you object too aggressively, it looks like you are dodging questions that go straight to credibility.

If you object where a straight answer should be easy, it tells the Court the answer is dangerous.

If you answer carefully, the answers still become part of the June 30 story.

That is the trap.

No matter which road you take, you are now paying tolls. 💸

*[Additional intervening paragraphs omitted.]*

I reduced 314 to 75 in good faith.

I documented the relevance basis.

I completed the meet-and-confer.

I got the impasse in writing.

I preserved the record.

I let the rule do what the rule does.

None of that was accidental.

**Record / narrowing rationale**

Normalized from connected Gmail for evidentiary readability; wording reproduced from the retrieved message.

# SOURCE EXCERPT — MAY 21, 2026 GMAIL COMMUNICATION

**Ryan McMillan copied on the source communication | excerpt page 3 of 3**

**SOURCE / LIMITATION NOTE:** *The following is a selected excerpt from the earlier 2:49 PM message quoted inside the same 3:44 PM Gmail message. It is reproduced because it contains the "invoice" rhetoric counsel later cited as evidence of financial-pressure motive. Intervening text is omitted and the omission is expressly marked.*

On Thu, May 21, 2026 at 2:49 PM Greg Lambert <lalambert1982@gmail.com> wrote:

*[Substantial earlier portions of the quoted message omitted.]*

6. A quick word to Coach Ross 💸

Coach Ross,

You are the client.

You are paying for this.

And what today produced was extraordinary in one specific way:

After months of litigation, threats, takedown activity, and settlement talk, your legal team ended the day explaining that the document they sent was not actually the real agreement.

"Your invoice is" source

So what was it?

A trailer?

A teaser?

A pilot episode?

A settlement demo?

Deleted scenes from Fast & Furious: Terms and Conditions? 🚗💥📄

Because what it was not — by your own counsel's admission — was the finished instrument that supposedly mattered.

Defendant is not your biggest problem in this paragraph.

Your invoice is. 💳

7. Two options. That's it. 📬

Please do one of two things:

1. Transmit the formal agreement in actual agreement form.
2. Confirm in writing that no such formal agreement presently exists.

Either answer completes the record beautifully.

Respectfully,
G Fury

*[The nested thread continues with Raab's 2:07 PM message; not reproduced here.]*

Normalized from connected Gmail for evidentiary readability; wording reproduced from the retrieved message.

# EXHIBIT F

## July 30, 2026 McMillan Email Exchange Regarding Third Rule 11 Notice

**WHAT THIS EXHIBIT SHOWS**

McMillan personally states that counsel reviewed the July 26 proposed Rule 11 motion; Lambert clarifies the personal-versus-institutional injury theory; McMillan responds "Understood" and maintains the position. Offered only to compare Doc. 73's blanket "unsupported"/"nonsensical" characterization with the actual notice-and-review record.

*ANNOTATION NOTICE: Yellow highlights and red rounded rectangles are demonstrative emphasis only. The reproduced source text is otherwise unaltered. Original-source page numbers remain visible where present.*

| | |
|---|---|
| **From** | Ryan McMillan <RMcMillan@gregcolemanlaw.com> |
| **To** | Greg Lambert; Gregory Coleman; S. Jarret Raab |
| **Cc** | Lisa Maxwell |
| **Date** | July 30, 2026, 4:58 PM ET |
| **Subject** | Ross v. Lambert - proposed Third Motion for Sanctions, July 26, 2026 |

Counsel confirms review

Greg,

We have reviewed your proposed Third Motion for Sanctions dated July 26, 2026. While we do not fully understand the grounds for relief you are seeking under Rule 11, our position nevertheless is that the allegations in the Complaint are sufficiently stated. Accordingly, we will not be withdrawing or amending the allegations at issue in your proposed Motion.

Thanks,

Ryan

| | |
|---|---|
| **From** | Greg Lambert |
| **To** | Ryan McMillan |
| **Cc** | Gregory Coleman; S. Jarret Raab; Lisa Maxwell |
| **Date** | July 30, 2026, 5:51 PM ET |
| **Subject** | Re: Ross v. Lambert - proposed Third Motion for Sanctions, July 26, 2026 |

Defined legal theory / requested cure

Ryan,

Since you mentioned that you don't fully understand the basis of the motion, let me simplify the issue. This isn't about whether Coach Ross believes he was defamed. It's a much narrower question.

Who owns the alleged injury?

Coach Ross is the plaintiff. The University of Tennessee is not. Yet the Complaint repeatedly describes injuries that appear to belong to the University and then rolls those allegations into Coach Ross's personal damages request.

I'm not asking anyone to concede liability. I'm asking for clarity. Section VIII outlines six different ways the issue can be corrected. The safe-harbor period expires on August 17, 2026. Absent a correction, I intend to file the motion on August 18, 2026.

Greg

| | |
|---|---|
| **From** | Ryan McMillan |
| **To** | Greg Lambert |
| **Cc** | Gregory Coleman; S. Jarret Raab; Lisa Maxwell |
| **Date** | July 30, 2026, 6:13 PM ET |
| **Subject** | Re: Ross v. Lambert - proposed Third Motion for Sanctions, July 26, 2026 |

"Understood" - position maintained

Understood Greg. Our position remains that allegations are sufficiently pled, and we do not agree to any of the proposals in Section VIII of the motion.

# EXHIBIT G

## July 29, 2026 Plaintiff's Request-by-Request Answers to the 38 Reissued RFAs - Selected Pages

**WHAT THIS EXHIBIT SHOWS**

The July 8 resolution produced substantive admissions/denials. Selected pages show admissions concerning the existing documentary record, Exhibit 1 authentication/metadata, recruit identification, and other factual gaps. These are offered as context showing that request-by-request answers generated a defined evidentiary record and later factual branches.

*ANNOTATION NOTICE: Yellow highlights and red rounded rectangles are demonstrative emphasis only. The reproduced source text is otherwise unaltered. Original-source page numbers remain visible where present.*

**C. University of Tennessee Authorization, Institutional Process, and Employment Records**

REQUEST FOR ADMISSION NO. 21: Admit that your Employment Agreement with the University of Tennessee contains Sections 6.1 and 6.7.

Representative admissions

ANSWER: Admit.

REQUEST FOR ADMISSION NO. 22: Admit that you have not produced any written authorization from the University of Tennessee permitting you to bring this lawsuit on behalf of the University of Tennessee.

ANSWER: Admit.

REQUEST FOR ADMISSION NO. 23: Admit that you did not obtain written authorization from the University of Tennessee Office of General Counsel before filing this lawsuit.

ANSWER: Admit.

REQUEST FOR ADMISSION NO. 24: Admit that before filing this lawsuit you did not send Defendant a written demand identifying each specific statement you wanted withdrawn or corrected.

ANSWER: Admit.

REQUEST FOR ADMISSION NO. 25: Admit that you have not produced any Human Resources complaint, Title IX complaint, written staff complaint, or written athlete complaint accusing Defendant of inappropriate comments or conduct toward women at the University of Tennessee.

ANSWER: Admit.

REQUEST FOR ADMISSION NO. 26: Admit that you have not produced any written statement from Ellen Hurst accusing Defendant of making inappropriate comments to her.

ANSWER: Admit.

REQUEST FOR ADMISSION NO. 27: Admit that you have not produced any written statement from any University of Tennessee athlete accusing Defendant of making inappropriate comments to that athlete.

ANSWER: Admit.

REQUEST FOR ADMISSION NO. 28: Admit that you have not produced any performance review, written warning, performance-improvement plan, disciplinary record, or separation record from Defendant's University of Tennessee employment that supports the characterizations identified in Request Nos. 13, 16, 19, 25, 26, or 27.

ANSWER: Admit.

**D. Exhibit 1: Authentication, Publication, and Distribution**

REQUEST FOR ADMISSION NO. 29: Admit that Exhibit 1, as filed with the Complaint at Doc. 1, PageID #: 25, contains no visible email header.

ANSWER: Admit.

REQUEST FOR ADMISSION NO. 30: Admit that Exhibit 1, as filed with the Complaint at Doc. 1, PageID #: 25, contains no visible sender email address.

ANSWER: Admit.

REQUEST FOR ADMISSION NO. 31: Admit that Exhibit 1, as filed with the Complaint at Doc. 1, PageID #: 25, contains no visible recipient email address.

ANSWER: Admit.

REQUEST FOR ADMISSION NO. 32: Admit that Exhibit 1, as filed with the Complaint at Doc. 1, PageID #: 25, contains no visible date-and-time stamp showing when it was sent.

ANSWER: Admit.

REQUEST FOR ADMISSION NO. 33: Admit that Exhibit 1, as filed with the Complaint at Doc. 1, PageID #: 25, identifies Ryan Stennett by name.

ANSWER: Deny.

REQUEST FOR ADMISSION NO. 34: Admit that you have not produced a native-format version of the email or communication represented by Exhibit 1.

ANSWER: Ross objects to Request 34 on the grounds that it is so vague and confusing as to be incapable of a definitive response. The document attached as Exhibit 1 to the Complaint is a letter drafted by Lambert and received by the Office of General Counsel of the University of

Authentication record

Tennessee. Subject to and without waiving the forgoing objection, Ross admits that he has not produced a native-format version of the letter at issue.

REQUEST FOR ADMISSION NO. 35: Admit that you have not produced metadata showing the sender, recipients, date, time, and transmission path of the email or communication represented by Exhibit 1.

ANSWER: Ross objects to Request 35 on the grounds that it is so vague and confusing as to be incapable of a definitive response. The document attached as Exhibit 1 to the Complaint is a letter drafted by Lambert and received by the Office of General Counsel of the University of

Authentication record

Tennessee. Subject to and without waiving the forgoing objection, Ross admits that he has not produced metadata relating to letter at issue.

**E. Claimed Harm, Tennessee Connection, and Recruit Identification**

REQUEST FOR ADMISSION NO. 36: Admit that you have not identified any specific recruit who was a resident of Tennessee and who declined to attend or remain at the University of

Tennessee because of Defendant's content.

ANSWER: Ross admits that he has not disclosed the identity of any specific residents of Tennessee that declined a track and field scholarship offer from the University of Tennessee but denies the remaining statements contained in this request.

REQUEST FOR ADMISSION NO. 37: Admit that you have not produced a list identifying each recruit you claim was affected by Defendant's content.

Recruit / location record

ANSWER: Ross admits that he has not produced a written list identifying each recruit that was affected by Lambert's conduct but denies that he has failed to identify certain recruits that were affected by Lambert's conduct.

REQUEST FOR ADMISSION NO. 38: Admit that you have not produced any document showing that Defendant was physically located in Tennessee when he created or published any content at issue.

Recruit / location record

ANSWER: Admit.

Dated: July 29, 2026.

*/s/ S. Jarret Raab*
Gregory F. Coleman (BPR # 014092)
S. Jarret Raab (admitted *pro hac vice*)
Ryan McMillan (BPR # 030542)
COLEMAN LAW, PLLC
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Tel. 865.407.0529
gcoleman@gregcolemanlaw.com
jraab@gregcolemanlaw.com
rmcmillan@gregcolemanlaw.com
*Counsel for Plaintiff Randolph Duane Ross*

# EXHIBIT H

## July 31, 2026 Plaintiff's Responses to Seventh Requests for Production - Recruit/Causation

**WHAT THIS EXHIBIT SHOWS**

Plaintiff referred recruit identification to forthcoming supplemental disclosures, stated no responsive documents for several recruit-causation categories, promised a reasonable search for UT recruiting communications, and stated no recruiting-damages calculation documents. Signed by Ryan McMillan.

*ANNOTATION NOTICE: Yellow highlights and red rounded rectangles are demonstrative emphasis only. The reproduced source text is otherwise unaltered. Original-source page numbers remain visible where present.*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | | |
|---|---|---|
| RANDOLPH DUANE ROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.: 3:26-cv-00013 |
| | ) | |
| GREGORY B. LAMBERT, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

**PLAINTIFF'S RESPONSES TO DEFENDANT'S SEVENTH**
**REQUESTS FOR PRODUCTION OF DOCUMENTS**

Plaintiff Randolph Duane Ross ("Ross") responds to Defendant Gregory B. Lambert's ("Lambert") Seventh Request for Production of Documents as follows:

REQUEST NO. 1: The full name and last known contact information (telephone number, email address, or mailing address) for each recruit Plaintiff has identified, referenced, or relied upon in support of any claim that Defendant's conduct caused the loss of a recruit or recruiting opportunity.

**RESPONSE**: Ross objects to Request 1 because it requires Ross to create a document that does not already exist in his possession, which is not required under Rule 34. *Howard v. Shelton*, 2022 WL

Future disclosure / no documents

4138572, at *7 (E.D. Ky. Sept. 12, 20222). Ross further refers Lambert to Ross' forthcoming supplemental initial disclosures to be served on August 10, 2026 by agreement of the parties.

REQUEST NO. 2: All documents, communications, or records reflecting that Plaintiff or anyone acting on Plaintiff's behalf actually contacted each recruit identified in response to Request No. 1 regarding the subject matter of this litigation.

**RESPONSE**: Ross objects to Request 2 to the extent it seeks production of Ross's and/or his employer's confidential and private information and seeks the confidential and private information of existing and/or potential student athletes that are protected from disclosure under the Family Educational Rights and Privacy Act (FERPA) or other similar statutes. Subject to and without waiving

Future disclosure / no documents

the foregoing objection, Ross states that he does not possess any documents responsive to this request.


D-R11-EX-041

REQUEST NO. 3: All statements, declarations, affidavits, emails, text messages, or other communications from each recruit identified in response to Request No. 1 confirming that the recruit's decision was affected by, or related to, any statement or conduct attributed to Defendant.

**RESPONSE**: Ross objects to Request 2 to the extent it seeks production of Ross's and/or his employer's confidential and private information and seeks the confidential and private information of existing and/or potential student athletes that are protected from disclosure under the Family Educational Rights and Privacy Act (FERPA) or other similar statutes. Subject to and without waiving the foregoing objection, Ross states that he does not possess any documents responsive to this request.

No responsive recruit records

REQUEST NO. 4: All documents reflecting each recruit's actual enrollment decision, including where each recruit ultimately enrolled, if known to Plaintiff.

**RESPONSE**: Ross objects to Request 4 on the grounds that it is overbroad in scope, unduly burdensome, not reasonably limited in time, seeks information that is not relevant to the claims or defense presently before the Court, and is not reasonably calculated to lead to the discovery of admissible evidence. Ross further objects to this request to the extent it seeks production of Ross's and/or his employer's confidential and private information and seeks the confidential and private information of existing and/or potential student athletes that are protected from disclosure under the Family Educational Rights and Privacy Act (FERPA) or other similar statutes. Subject to and without waiving the foregoing objection, Ross states that he does not possess any documents responsive to this request.

REQUEST NO. 5: All communications between Plaintiff and any University of Tennessee coaching staff, admissions office, or compliance office concerning the recruiting outcomes referenced in Plaintiff's testimony or filings.

**RESPONSE**: Ross objects to Request 5 on the grounds that it is overbroad in scope, unduly burdensome, so vague at to be incapable of a definitive response, and to the extent it seeks the production of Ross's and/or his employer's confidential and private information. Subject to and



D-R11-EX-042

Search promise / damages record

without waiving the foregoing objections, Ross states that, following a reasonable search, he will produce all responsive and discoverable documents in his possession at a mutually convenient time and location.

REQUEST NO. 6: All documents supporting any calculation of damages attributed to lost recruiting, including the methodology used to calculate any dollar figure.

**RESPONSE**: Ross objects to Request 6 to the extent it seeks the production of materials that constitute attorney-client communication, that are protected from disclosure under the work product doctrine, or that contain the thought processes, mental impressions, or legal theories of counsel. Subject to and

Search promise / damages record

without waiving the foregoing objections, Ross states that he does not possess any documents responsive to this request.

*/s/ Ryan McMillan*
Gregory F. Coleman (BPR # 014092)
S. Jarret Raab (admitted *pro hac vice*)
Ryan McMillan (BPR # 030542)
COLEMAN LAW, PLLC
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Tel. 865.407.0529
gcoleman@gregcolemanlaw.com
jraab@gregcolemanlaw.com
rmcmillan@gregcolemanlaw.com

*Counsel for Plaintiff Randolph Duane Ross*

# EXHIBIT I

## August 13, 2026 Plaintiff's Supplemental Initial Disclosures - Selected Pages

**WHAT THIS EXHIBIT SHOWS**

Plaintiff expressly reserved continuing supplementation and added new named witnesses and broad categories after the July 8 agreement. The additions include witnesses and recruit/parent and former-employer entries that generated new witness-specific and causation questions.

*ANNOTATION NOTICE: Yellow highlights and red rounded rectangles are demonstrative emphasis only. The reproduced source text is otherwise unaltered. Original-source page numbers remain visible where present.*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | | |
|---|---|---|
| RANDOLPH DUANE ROSS, Plaintiff, v. GREGORY B. LAMBERT, Defendant. | ) ) ) ) ) ) ) ) | Case No. 3:26-cv-00013 |

## PLAINTIFF'S SUPPLEMENTAL INITIAL DISCLOSURES

Plaintiff Duane Ross ("Plaintiff") submits these Supplemental Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1). These Initial Disclosures are made in good faith and without prejudice to producing during discovery, or at trial, information, documentation, or data that are subsequently discovered and determined to be relevant, or a product of ongoing investigation and/or evaluation. In providing these Initial Disclosures, Plaintiff is not identifying documents protected from disclosure by any applicable privilege, nor do they waive in any respect the right to object to the discovery requests of Defendant. Plaintiff reserves the right to supplement these Initial Disclosures to name other witnesses and expert witnesses in response to witnesses and/or experts not yet disclosed by discovery, or not yet disclosed by Plaintiff as possible primary witnesses. Plaintiff reserves the right to call and elicit opinions from all witnesses listed or to be

Evolving disclosure record

listed by Defendant, including expert witnesses. Plaintiff reserves the right to supplement or amend these Initial Disclosures as discovery progresses.

**I. The name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.**

| Name | Contact Information | Connection to Case | Summary of Info Known |
|---|---|---|---|
| Duane Ross | May be contacted through counsel for Plaintiff | Plaintiff | Plaintiff's claims and damages |
| Mikaela Gardner | May be contacted through counsel for Plaintiff | Plaintiff's family member | Lambert's defamatory and other published statements; falsity |
| Randolph Ross, Jr. | May be contacted through counsel for Plaintiff | Plaintiff's family member | Lambert's defamatory statements; falsity |

Plaintiff additionally identifies the following people that may have viewed Lambert's defamatory publications in question:

| Name | Address/Phone Number | Connection to Case | Summary of Info Known |
|---|---|---|---|
| Ronald Garner | (217) 278-1317 | Plaintiff's family member | Lambert's defamatory statements; falsity |
| Devin West | (407) 461-8215 | UT employee | Lambert's defamatory statements; falsity |
| Tempest Love | (864) 940-2802 | Former UT employee | Lambert's defamatory statements; falsity |
| Kyle Ellis New named witness | (405) 761-5026 | UT employee | Lambert's defamatory statements; falsity |
| Ellen Hurst | (865) 469-4538 | UT employee | Lambert's defamatory statements; falsity |
| Jacious Sears | (561) 294-4770 | UT student athlete | Lambert's defamatory statements; falsity |
| Clement Ducos | (865) 296-3208 | UT student athlete | Lambert's defamatory statements; falsity |
| Marcus Hilliard | (865) 399-5578 | UT employee | Lambert's defamatory statements; falsity |
| Charisma Taylor | (419) 779-1975 | UT student athlete | Lambert's defamatory statements; falsity |
| Brianna White | (646) 338-8335 | UT student athlete | Lambert's defamatory statements; falsity |
| Alex Love | (678) 622-8837 | Spouse of Tempest Love | Lambert's defamatory statements; falsity |
| Hadrien Choukroun | (865) 804-1194 | UT employee | Lambert's defamatory statements; falsity |
| Jeff Chakouian | (865) 801-3972 | UT employee | Lambert's defamatory statements; falsity |
| Justin Duncan | (405) 880-0728 | UT employee | Lambert's defamatory |


D-R11-EX-046

New / broadened witness categories

| | | | |
|---|---|---|---|
| | | | statements; falsity |
| Sirmawn and Dana Wilson | (336) 908-1972 | Recruit and Parent | Lambert's defamatory statements; falsity |
| Carl Hicks | (443) 309-5653 | Lambert's former employer | Lambert's defamatory statements; falsity |
| Robyn Johnson | (617) 599-6318 | Lambert's former employer | Lambert's defamatory statements; falsity |

Additionally, Plaintiff states that the following persons may also have knowledge of facts relevant to the claim or defense of any party:

1. Any additional witnesses identified in the Complaint, including exhibits.

2. Any other individuals identified in Lambert's Initial Disclosures.

3. Any other individuals identified in Lambert's discovery responses.

4. Third parties – including current and former employees of the University of Tennessee – who are knowledgeable about Lambert's employment and resignation at the University of Tennessee, Lambert's EEOC claim and related communications, and Lambert's defamatory statements and social media posts about Ross. *See* Complaint, Ex. 1, 2.

5. Third parties – including current and former employees of the Vanderbilt University, the University of Florida, the University of South Carolina, the University of Alabama, and the University of Texas – who are knowledgeable about Lambert's defamatory statements and other publications about Ross. *See* Complaint, Ex. 2.

New / broadened witness categories

6. Third parties – including current and prospective track and field athletes and their family members – who viewed Lambert's defamatory statements and social media posts about Ross.

7. Consider Ekanem and Grace Nwokocha., who were former track athletes coached by Ross in the past, and identified by Lambert in his Motion for Sanctions. ECF 42, 46.

# EXHIBIT J

## August 14, 2026 Staggered Discovery Roadmap and 8:00 A.M. Transmittal

**WHAT THIS EXHIBIT SHOWS**

Same-day contemporaneous record that Defendant expressly organized discovery to avoid overlapping deadlines, reduce burden/timing disputes, consolidate superseded drafts, hold some discovery in reserve, and stagger later response dates.

*ANNOTATION NOTICE: Yellow highlights and red rounded rectangles are demonstrative emphasis only. The reproduced source text is otherwise unaltered. Original-source page numbers remain visible where present.*

# SOURCE - AUGUST 14, 2026 GMAIL COMMUNICATION

| | |
|---|---|
| **From** | Greg Lambert <lalambert1982@gmail.com> |
| **To** | S. Jarret Raab <jraab@gregcolemanlaw.com> |
| **Cc** | Randolph Duane Ross; Ryan McMillan; Gregory Coleman; Lisa Maxwell; UT counsel |
| **Date** | August 14, 2026, 8:00 AM ET |
| **Subject** | Discovery Roadmap Clarification - Staggered RFA/RFP Response Schedule |

**SOURCE / LIMITATION NOTE:** Full body reproduced in substance from the connected Gmail record; the attached two-page calendar is separately reproduced in this packet.

I am sending this clarification so there is a single written roadmap of the operative discovery sets, the supplemental sets being served, and the response dates I will recognize.

The purpose is to avoid overlapping deadlines and address Plaintiff's repeated concerns regarding volume, burden, and timing. Where a supplemental RFA set has a companion RFP set, the RFAs and RFPs are placed on the same response date.

Current roadmap: September 2 - 24 RFAs and 12 RFPs concerning Complaint Exhibit 1; September 14 - 25 supplemental RFAs concerning recruiting, production, and causation, paired with the August 13 RFPs; October 2 - Amended Seventh Set, 30 RFAs; November 2 - Amended Second Supplemental Set, 30 RFAs; November 30 - 30 supplemental RFAs and 7 companion RFPs concerning witness identification and related issues; December 30 - 20 supplemental RFAs and 10 companion RFPs concerning Carl Hicks, Coppin State University, and the basis for Plaintiff's August 13 witness designation.

Stated purpose

This clarification is intended to reduce calendar overlap and eliminate unnecessary disputes about which document or deadline controls. It does not withdraw otherwise relevant discovery or waive supplementation based on later disclosures, productions, or responses.

If your records reflect a different operative document, service date, or response date, please identify the specific item in writing so we can resolve the calendar issue now rather than later.

Prepared from the connected Gmail record for source comparison. Omitted material is expressly identified; native message remains preserved in the account.

# ROSS v. LAMBERT - DISCOVERY CALENDAR AND CLARIFICATION

Case No. 3:26-cv-00013-TAV-JEM | August 14, 2026

**Purpose.** This calendar consolidates the discovery actually served or transmitted, identifies superseded drafts, and states the later response dates Defendant will not seek to enforce before for the newly clarified or consolidated sets. It is intended to reduce overlapping response obligations and avoid ambiguity about service status. It is not a new discovery request and does not alter any Court order.

Calendar purpose

## 1. Operative discovery already served or transmitted

| Service date | Set | Count | Calendar date | Subject / status |
|---|---|---|---|---|
| Aug. 3, 2026 | Tenth Set - Exhibit 1 | 24 RFAs | Sept. 2, 2026 | Provenance, completeness, authentication, transmission, publication of Complaint Exhibit 1. |
| Aug. 3, 2026 | Exhibit 1 RFPs | 12 RFPs | Sept. 2, 2026 | Native email, source, metadata, chain of custody, authentication, forwarding/distribution. |
| Aug. 5, 2026 | Amended Seventh Set | 30 RFAs | Oct. 2, 2026 | Reduced/consolidated set; supersedes prior Seventh Set. |
| Aug. 5, 2026 | Amended Second Supplemental Set | 30 RFAs | Nov. 2, 2026 | Reduced/consolidated set; supersedes prior Second Supplemental version. |
| Aug. 13, 2026 | Supplemental-Disclosure RFPs | 41 RFPs | Sept. 14, 2026* | Witness foundation, falsity, publication, recruiting causation, damages, complete context. |

** September 14 is used only as the calendar roadmap date because the ordinary 30-day period from August 13 lands on a weekend. Any controlling Court order, stipulation, or applicable Rule governs.*


D-R11-EX-050

## 2. Clean / consolidated sets transmitted with this clarification

| Paired set | Count | Defendant will not contend untimely before | Clarification |
|---|---|---|---|
| Corrected Recruiting / Production / Causation | 25 RFAs (paired with the already-served 41 RFPs) | Sept. 14, 2026 | The RFA and August 13 RFP block use the same roadmap date. The 41 RFPs are not re-served; the clean RFA copy cures the contradictory draft legend without substantive expansion. |
| Witness / Disclosure / CW Foundation | 30 RFAs + 7 RFPs | Nov. 30, 2026 | Consolidates the unserved disclosure-accuracy, witness-specific, and nonduplicative CW/Coach issues into one paired packet; Bates references may be used for material already produced. |
| Hicks / Coppin | 20 RFAs + 10 RFPs | Dec. 30, 2026 | Focused paired packet concerning Ross/UT contact with Carl Hicks/Coppin and the basis for Hicks' falsity designation; same response date for admissions and production. |

## 3. Drafts not being separately served

- Blended RFA Set 2 - Disclosure Accuracy/Completeness (25 RFAs): not separately served; consolidated into the 30-RFA / 7-RFP Witness/Disclosure/CW paired set.
- Witness-Specific Publication Identification (22 RFAs): not separately served; consolidated into the 30-RFA / 7-RFP Witness/Disclosure/CW paired set.
- ROSS_000010 / CW-Coach draft (15 RFAs + 8 RFPs): nonduplicative issues consolidated into the 30-RFA / 7-RFP Witness/Disclosure/CW paired set; later production may be answered by Bates reference when already fully produced.
- Prior Hicks/Coppin Set 3 + Ninth RFP draft (20 RFAs + 18 RFPs): replaced by the 20-RFA / 10-RFP narrowed paired service copy due on the same December 30 roadmap date.

Consolidation / staggering

- Probationary Period / Ellen Hurst draft (25 RFAs + 12 RFPs): held in reserve and not being served with the present package.

Consolidation / staggering

## 4. Staggered RFA/RFP response sequence

**Sept. 2 - 24 RFAs + 12 RFPs | Sept. 14 - 25 RFAs + 41 RFPs | Oct. 2 - 30 RFAs | Nov. 2 - 30 RFAs | Nov. 30 - 30 RFAs + 7 RFPs | Dec. 30 - 20 RFAs + 10 RFPs**

Where RFAs and RFPs are served together or deliberately paired, they use the same roadmap date. The final two combined blocks are placed at the end of November and the end of December so the active RFA calendar is completed within 2026 while preserving substantial advance notice. Plaintiff may respond earlier. Defendant does not represent that opposing counsel has stipulated to these dates; Defendant is stating the dates before which he will not contend the responses are untimely. If Plaintiff contends any service status, superseding relationship, or calendar entry above is inaccurate, Plaintiff should identify the specific item in writing so the calendar can be corrected before a deadline becomes disputed.

**Gregory Bernard Lambert**
**Defendant and Counter-Plaintiff, Pro Se**

# EXHIBIT K

## August 13, 2026 Email Seeking Supplementation Before Additional Discovery - Selected Excerpts

**WHAT THIS EXHIBIT SHOWS**

Defendant expressly gave Plaintiff an opportunity to supplement before converting every new disclosure issue into RFAs/RFPs, stated that meaningful supplementation would reduce written discovery, and stated he was not trying to manufacture a discovery dispute.

*ANNOTATION NOTICE: Yellow highlights and red rounded rectangles are demonstrative emphasis only. The reproduced source text is otherwise unaltered. Original-source page numbers remain visible where present.*

# SOURCE EXCERPT - AUGUST 13, 2026 GMAIL COMMUNICATION

| | |
|---|---|
| **From** | Greg Lambert <lalambert1982@gmail.com> |
| **To** | Ryan McMillan <RMcMillan@gregcolemanlaw.com> |
| **Cc** | S. Jarret Raab; Gregory Coleman; Randolph Duane Ross; Lisa Maxwell |
| **Date** | August 13, 2026, 6:32 PM ET |
| **Subject** | Re: Ross - First production of documents |

**SOURCE / LIMITATION NOTE:** Selected excerpts preserve the statements bearing on why additional discovery was contemplated and the attempt to narrow it through supplementation before further written discovery.

I have now gone back through Plaintiff's August 13 Supplemental Initial Disclosures, the July 7 meet-and-confer record, the Joint Status Report submitted to Judge McCook, Plaintiff's prior RFP responses, Ryan's August 3 clarification, and the production served today.

Contemporaneous narrowing effort

The supplemental disclosures did not narrow the case. They created more discovery.

So before I turn the August 13 disclosure into another round of RFAs and RFPs, I am giving Plaintiff an opportunity to clean this up through a meaningful supplementation.

**[Intervening witness-specific and recruit-specific requests omitted.]**

12. This disclosure created new RFAs and RFPs

Contemporaneous narrowing effort Contemporaneous narrowing effort

The supplemental disclosure produced information. It also produced questions. A lot of them.

Contemporaneous narrowing effort

I can turn every one of those questions into RFAs and RFPs. I would rather not. A meaningful supplementation now will reduce the amount of written discovery required later. That is the entire point of this email.

I am not trying to manufacture a discovery dispute. I am trying to determine what Plaintiff is actually claiming.

I am giving Plaintiff the opportunity to answer those questions through supplementation before I ask them individually.

**P.S. - contemporaneous service explanation**

I am attaching a new set of twenty-five Requests for Admission directed specifically to the issues created by Plaintiff's August 13 disclosures and accompanying production. These requests address the accuracy and completeness of the witness descriptions, the repeated "falsity" designations, actual versus possible viewing, the Wilson entry, unidentified recruits, "Tate," recruiting causation, document identification, and the evidentiary basis for the claimed damages.

These questions exist because the August 13 disclosure created factual issues that did not exist in this form before August 13.

Prepared from the connected Gmail record for source comparison. Omitted material is expressly identified; native message remains preserved in the account.

# EXHIBIT L

## August 4, 2026 Raab Email - Adverse Context Regarding Counsel's Interpretation of the 38-RFA Resolution

**WHAT THIS EXHIBIT SHOWS**

Included for candor. Raab states counsel's view that 25 total was the reasonable upper limit and that the agreement to answer 38 was intended to resolve the issue. This is evidence of counsel's interpretation; it is compared with the actual signed July 8 text, which contains no express prospective cap.

*ANNOTATION NOTICE: Yellow highlights and red rounded rectangles are demonstrative emphasis only. The reproduced source text is otherwise unaltered. Original-source page numbers remain visible where present.*

# ADVERSE-CONTEXT SOURCE - AUGUST 4, 2026 GMAIL COMMUNICATION

| | |
|---|---|
| **From** | S. Jarret Raab <JRaab@gregcolemanlaw.com> |
| **To** | Greg Lambert <lalambert1982@gmail.com> |
| **Cc** | Ryan McMillan; Gregory Coleman; Lisa Maxwell |
| **Date** | August 4, 2026 |
| **Subject** | RE: Tenth RFAs and Eighth RFP - Let's Try Step One First/settlement proposal |

**SOURCE / LIMITATION NOTE:** Included because it is adverse to Defendant and shows counsel's contemporaneous interpretation that the 38-RFA resolution was intended to cap the issue. Defendant distinguishes this later interpretation from the actual text of the signed July 8 Joint Status Report.

Adverse context included

Greg,

Adverse context included

Our position is that 25 RFAs (in total) is the upper limit of what is reasonable, and that is what is commonly ordered by courts. Nevertheless, we agreed to answer 38 RFAs so as to mutually resolve the issue. Since that time, you have issued an additional 70 RFAs (46 via the "Seventh Set" and another 24 via the "Tenth Set"). 70 additional RFAs, on top of those already objected to and/or responded is harassing and will be objected to as such.

If you believe your newly issued RFAs are not objectionable and that there is a legitimate basis to require our client to answer them, the Court has a procedure in place to address that.

Jarret

Prepared from the connected Gmail record for source comparison. Omitted material is expressly identified; native message remains preserved in the account.